[No. 5274.]
[No. 2905 C. A.]

THE AMERICAN SURETY COMPANY v. EMPSON.

Insurance—Surety Bonds—Written Interlineations—Construction.

Defendant contracted with a third person to thresh peas for the season of 1897, and to protect him from any liability incurred by the machine used being an infringement upon other patent pea-shellers; and the plaintiff surety company executed a bond to such third person conditioned upon the faithful performance of such agreement.   The bond stipulated that defendant should pay a specified premium in advance, upon a certain date of each and every year, for executing said instrument, "and continuing the same from year to year at the request of said party of the first part," until said company shall be discharged from all liability under said instrument, the words quoted being written in

the printed form. Held, that the bond obligated the company to indemnify the third person against only such liability as he incurred by the use of the machine during the season of 1897; and that the company was not entitled to recover premiums for succeeding years in the absence of defendant's request that the bond be continued, since, when written and printed provisions in a contract conflict, the written provisions prevail.—P. 447.

*Appeal from the District Court of Boulder County.*
*Hon. James E. Garrigues, Judge.*

Action by The American Surety Company against John H. Empson. From a judgment for defendant, plaintiff appeals.        *Affirmed.*

Messrs. BICKSLER, McLEAN & BENNETT, for appellant.

Mr. L. P. McGUIRE, for appellee.

The appellant, plaintiff below, brought this action to recover from appellee premiums alleged to be due on its certain bond of indemnity executed April 17, 1897, whereby it became surety for appellee's performance of his covenants contained in a contract made by him with one J. T. Polk for threshing 500 acres of peas during the season of 1897. The contract provided that the work was to be done with what is known as Empson's Pea-Sheller; the principal covenant was to protect Polk from any liability he might incur by reason of the Empson machine being an infringement of other patent pea-shellers. The appellee paid the appellant $100, the stipulated premium for 1897. In the bond it is provided that Empson should pay in advance to the company, on the 17th day of April of each and every year, the premium or charge of $100 "for executing said instrument, and continuing the same from year to year at the request of said party of the first part (Empson),

until said company shall, in the manner provided by law, be discharged or released from any and all liability and responsibility upon and from said instrument." The words "and continuing the same from year to year at the request of said party of the first part" were written in the printed blank used by the appellant company. Empson was required to, and did, put up as collateral to secure the company against loss by reason of its suretyship 100 shares of the capital stock of The Empson Packing Company, which was returned to Empson on December 18, 1897, upon condition it should be returned to the company upon the happening of any forfeiture proceedings.

There were no suits of any character brought against Polk for using the Empson machine during the year 1897. There was no request by Empson for a continuance of the bond after 1897, nor was it renewed or formally released. On May 7, 1900, the company sent a bill to Empson for premiums for the years 1898, 1899 and 1900, and to April 28, 1901, amounting in the aggregate to $300. This suit is brought to recover this amount. The case was tried to the court, and judgment rendered for the defendant.

Mr. JUSTICE GODDARD delivered the opinion of the court:

Appellant relies upon that clause in its printed form which provides for the payment of an annual premium of $100 until proper release of the company from the bond should be furnished. There might be some force in this contention if it were not for the fact that a written clause was inserted to the effect that such payments were conditioned upon the continuance of the bond "from year to year at the request of said party of the first part." When writ-

ten and printed provisions in a contract cannot be reconciled, the written provisions prevail. "The written parts are 'the immediate language and terms selected by the parties themselves for the expression of their meaning,' and accordingly must control in case of conflict."—2 Page on Contracts, § 1119; Beach on the Modern Law of Contracts, § 728.

The court below found that the bond sued on was intended to, and did, obligate the company to indemnify Polk against only such liability as he might incur by the use of the Empson pea-sheller during the year 1897; that the $100 paid was the full premium for this particular bond; that no further premiums were payable because Empson had not requested that it be continued or renewed. That this was the construction put upon the bond by the company itself is evidenced by the fact that it surrendered the stock of The Empson Packing Company that it held as collateral, and did not make any demand or claim for premiums for three years, which, according to its present contention, were due and payable in advance in each year.

We think the court below correctly held that the liability of the surety company was limited to such matters as occurred during the year 1897, and that grew out of the use of the Empson machine by Polk in the performance of the contract between him and Empson for that year only; that the $100 paid was the full premium for this bond, and that no further premiums were payable. Its judgment is, therefore, affirmed.                                  *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.