No. 33,977

THE FIDELITY & DEPOSIT COMPANY OF MARYLAND, *Appellee*, v. THE HAWKINS MARBLE & TILE COMPANY, *Appellant*.

(84 P. 2d 875)

Opinion filed December 10, 1938.

*William Keith*, of Wichita, for the appellant.

*Roy H. Wasson* and *Clair E. Robb,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This action was commenced in the city court of Wichita by an Insurance Company to collect from the defendant Marble Company an annual premium of $25 for five successive years on an indemnity bond of $5,000, issued by the Insurance Company on the application of the Marble Company and running in favor of the city of Wichita for certain protection.

The city court rendered judgment in favor of the plaintiff Insurance Company, and the defendant Marble Company appealed to the district court. The case was there tried before a jury, the demurrer to plaintiff's evidence was overruled, and at the close of the evidence the trial court gave the jury a peremptory instruction to return a verdict for plaintiff for $125, with interest, which it did, and later the court rendered judgment thereon against the defendant and overruled defendant's motion for a new trial, from all of which adverse rulings the defendant appeals to this court.

A preliminary question is mentioned in the brief of plaintiff as to the extent of the appeal, it having been taken within two months from the overruling of the motion for a new trial, but not within two

months from the date on which the judgment was rendered. The appeal, however, under such circumstances, brings here for review all rulings and questions that were open for consideration on the motion for a new trial. (*Smith v. Bowersock*, 95 Kan. 96, 147 Pac. 1118.)

The appellant assigns the following specifications of error:

"First, in refusing the admission of competent evidence offered by defendant.

"Second, in failing to submit the case to the jury for its decision under general and special instructions requested by defendant.

"Third, in sustaining plaintiff's motion for an instructed verdict in its favor and instructing the jury to return same.

"Fourth, in overruling defendant's motion for a new trial."

The city of Wichita, at the request of the Marble Company, issued an ordinance April 1, 1929, granting the Marble Company a revocable permit to erect and construct an elevated track and traveling crane across Santa Fe street in the city, the plans and specifications of which were subject to the approval of the city engineer, and the ordinance required a good and sufficient bond in the sum of $5,000 to hold the city harmless and to protect anyone whomsoever using and traveling upon that street, and further provided—

". . . that this permit is a revocable permit and may be revoked at any time by the governing body and without any reason being given therefor, and when so revoked said overhead track and traveling crane shall be removed by said company at its own expense."

The application of the Marble Company, dated June 1, 1929, for the issuance by the plaintiff Insurance Company of such a bond to the city of Wichita, Kan., contained an agreement—

". . . to pay to the company the premium charge of twenty-five dollars ($25) annually in advance on the ——— day of ——— in each and every year, as long as liability shall continue under said bond, or any continuation or renewal thereof, or substitute therefor (said bond or any such continuation, renewal thereof, or substitute being hereinafter referred to as said bond), and until evidence satisfactory to the company of the termination of such liability shall be furnished to it at its home office in the city of Baltimore. . . ."

And the same application contained the further agreement:

". . . that the company shall have the absolute right to cancel said bond in accordance with any cancellation provision therein contained. . . ."

The bond was issued by the plaintiff Insurance Company on July 5, 1929, to the city of Wichita, and it referred therein to the Marble Company as principal, which desired to install a traveling crane

across Santa Fe street and to comply with the permission of the city to install the traveling crane and to protect the public from any injury, and therefore the Insurance Company agreed to protect the city of Wichita against any claims for damages "by reason of the installation and operation of said traveling crane." It was further provided in the policy that—

"This obligation shall be continuous, except that it may be canceled by the removal of said traveling crane from the avenue and the replacing of said avenue in as good condition as it was prior to said installation. . . ."

The elevated track referred to as being across Santa Fe street was about 18 feet above the level of the street, which was 18 feet wide, and was supported at that height at each end by steel I-beams 10 to 12 inches in diameter, which were based on cement foundations, one on the Santa Fe land and the other on the defendant's land. The traveling crane was built wholly on the land of the defendant and operated over the elevated track in loading and unloading carloads of marble across the elevated track.

The premium of $25 per year was paid by the defendant for four years while the track and traveling crane were in operation, or until June 1, 1933, and this action is for the premium for five years since June 1, 1933. The defendant at that time discontinued the use of both the track and the traveling crane and removed the latter to the inside of a building, but left the elevated track across the street.

Appellant urges that its liability for premiums ceased when it refused to pay the premiums in advance and sent notice to the Insurance Company that it no longer required the bond. That might be true if the bond had been issued for the protection of the defendant, but certainly not true when it had applied for it and it was written absolutely for the protection of others.

Appellant's next defense is that its liability for premiums and the liability of the Insurance Company ceased when the latter notified the city on June 8, 1933, that it was canceling the bond and that it would be noneffective after June 19, 1933. This statement must be supplemented by the fact that the city immediately informed the Insurance Company that the provisions of the bond and the application therefor had not been complied with by the removal of the traveling crane, as shown in the letter of the city dated June 23, 1933, and in a later letter stating that the street had not been replaced in as good condition as it was prior to the installation, and as shown in a still later letter—

"The city will be unable to give you a release on the bond as long as the elevated tracks remain in position.

"Upon the removal of the tracks, we will be pleased to accept a cancellation notice on the bond."

This correspondence does not show a cancellation of the bond by the plaintiff when it was made to appear that the city objected.

Appellant argues the obligation of the bond as being limited to claims for damages by reason of the installation and operation of the traveling crane. This is the first portion thereof, as quoted above, but the second portion covers the situation until the street is replaced in as good condition as it was prior to the installation. We know of no right to limit liability to one specific obligation and eliminate the other, when both are contained in the same bond. This brings the matter to the consideration of the theory of the appellant that the elevated track was well built and so high above the street level that no contemplated danger could occur, and on this point appellant offered evidence which was rejected. That would mean that the elevated track could remain there indefinitely if it were well and stoutly built.

Appellant cites text and decisions to show there is no liability where no bond in fact was required by law. They are not applicable here. The bond was requested and given to comply with that application and the requirements of the city for the issuance of a permit. Are we to recognize it as a right to leave an elevated track across the street indefinitely because a permit was originally granted to construct it and because it is well built and not likely to fall or cause damage? We think not, and that the evidence along this line was properly excluded.

It is further urged that because the city also had the privilege of canceling the bond by ordering the removal of the traveling crane, and that since it did not order it removed, it should not be allowed to claim the continued protection of the bond. The traveling crane was removed before this action was commenced and before much, if any, of the unpaid premiums fell due, so no such order applied. Besides, the city is not a party to this action, and it is shown to be objecting to the canceling of the bond until the elevated track is removed and the street is replaced in as good condition as it was prior to the installation. The permit ordinance required the removal of both the traveling crane and the elevated track.

The case of *Fidelity & Deposit Co. v. Libby*, 72 Neb. 850, 101 N.

W. 994, is cited in support of the rule here urged by appellant, that if no definite time is expressly or impliedly provided in the contract either party may end the duration of such a bond at his own pleasure. The Nebraska case, *supra,* holds that a bond of indemnity which does not stipulate how long it shall continue in force, but stipulates that the annual premium shall be paid in advance so long as it does remain in effect, "does not require the payment of the premium so as to continue the obligation, but leaves the obligee at liberty to decline to make payment and thus put a period to the contract so far as the rights of third persons are not affected." (Syl.)  In the opinion it was said:

"If the premium is not paid it 'lapses' or ceases to be obligatory as between the parties to it, except as to past transactions, although there may or may not be circumstances continuing it in force as to interested third persons, about which we express no present opinion." (p. 852.)

This Nebraska case concerned the collection of annual premiums on the indemnity bond of a deputy county treasurer.  The bond ran to the county for its protection, and the application for the first year stipulated that the deputy should pay the annual premium "in advance, while said bond shall continue in force."  The second year the deputy secured a similar bond from another insurance company, which was accepted and approved by the county board.  The exception made in the opinion as to the discontinuance of the first bond not affecting the interest of third parties makes the case a substantial argument in favor of the continuance of the bond in the case at bar where the only interest concerned is a third party not a party to the action.

In the case of *Amer. Surety Co. v. Empson,* 39 Colo. 445, 89 P. 967, the insurance company, upon the application of a threshing-machine man, executed an indemnity bond in favor of a farmer growing peas extensively, to indemnify him against the threshing machine being an infringement upon other patents.  The bond stipulated that the threshing-machine man should pay a specified premium in advance upon a certain date of each and every year for executing said instrument, and written in the bond was the provision as to continuation of the bond to be at the request of the threshing-machine man.  It was there held that the written part was in conflict with the printed portion and should prevail, and the defendant was liable only for the premium for the first year.

The evidence does not indicate that the Insurance Company, after

getting the disapproval of the city of Wichita, ever attempted to cancel or discontinue the bond, and there was an apparent acquiescence in the claim of the city to continue the bond until the elevated track should be removed. The city plainly, from its correspondence, claimed a liability of the Insurance Company under the bond as long as the elevated track remained, and this would be a sufficient consideration for the continued premiums. The protection under the bond and liability for premiums therefor are mutual. It is said in 32 C. J. 1211:

". . . where the company waives forfeiture or its right to cancel and elects to continue the policy in force, insured may still remain liable for the premiums; but the company cannot elect to cancel the policy and recover premiums claimed to have been earned thereafter."

The simple failure to pay a premium will not in itself terminate a bond. (45 A. L. R. 617, annotation.)

In 8 Am. Jur. 723 it is stated that—

"A bond that is executed in conjunction with a contract or other accompanying instrument must be read in the light of the terms thereof."

As to the claim of error in directing a verdict the trial court had already expressed itself as to the sufficiency of the plaintiff's evidence when it overruled the demurrer to its evidence and practically all the evidence of the defendant was excluded, so it was consistent with the ruling on the demurrer to direct the verdict in favor of the plaintiff. The evidence of the plaintiff consisted almost entirely of written instruments, and the force and effect thereof was practically a question of law, and therefore it was a proper case for a directed verdict. It was held in *Wilson v. Gonder,* 121 Kan. 469, 247 Pac. 631, that—

"Where the evidence and admissions of the complaining party leave nothing for decision but a question of law, it is competent for the court to direct a verdict in accordance with the law." (Syl. ¶ 2.)

We find no error in the several assignments made and strenuously argued by the appellant.

The judgment is affirmed.