[Civ. No. 14820.   Second Dist., Div. Two.   Dec. 20, 1945.]

D. A. DAVIS, Plaintiff and Respondent, v. JENNIE MILLER STULMAN, Appellant; HOLLYWOOD STATE BANK (a Banking Corporation), Defendant and Respondent.

Benjamin W. Shipman for Appellants.

Lawrence M. Cahill and Walter G. Danielson for Respondents.

FOX, J. pro tem.—This is an appeal by defendant Jennie Miller Stulman from an adverse judgment in an action for declaratory relief.

The contract in question, dated November 19, 1941, was executed by plaintiff D. A. Davis as the first party, defendant Stulman as the second party, defendant Nathaniel A. Davis as the third party, and defendant Estelle Davis as the fourth party. Plaintiff D. A. Davis is the father of defendant Nathaniel A. Davis, and will therefore be referred to herein as the elder Davis while Nathaniel will be designated as the younger Davis. The Hollywood State Bank, which became a party to the transaction through the escrow, will be referred to as the bank.

The subject matter of the contract was certain resort property located in Riverside County which the elder Davis was undertaking to acquire. The major portion of this property was formerly owned by the Stulman Hot Springs Corporation, which later went into bankruptcy. There was a trust deed against the property which secured two promissory notes dated February 17, 1939. One of these notes was in favor of Meyer Katz for $11,750 and the other in favor of the younger Davis for $10,316.47. The trust deed was foreclosed and at the sale in January, 1940, the younger Davis acquired

10/22nds undivided interest in the property and the bank the remaining 12/22nds interest. Pending the foreclosure sale the bank agreed to sell its interest to the younger Davis for $9,000: $2,000 in cash and the balance of $7,000 represented by a note on which there was an unpaid balance of $6,000 at the time the contract of November 19, 1941, was executed. Then on August 27, 1940, the younger Davis and Mrs. Stulman entered into a partnership agreement by which it was agreed, among other things, that a one-half interest in the said property and business would be conveyed to her. She was to assume one-half of the balance due on his note to the bank; they were to be equal partners. Mrs. Stulman went into possession. A dispute then arose and ultimately the younger Davis went into possession. The net result was that Mrs. Stulman filed a suit in Riverside County for an accounting, dissolution of the partnership and partition of its assets. Before trial, however, the parties entered into a written compromise contract, dated July 2, 1941. This contract was also joined in by Estelle Davis, a sister of the younger Davis who owned an adjacent piece of land, referred to therein as parcel B, on which a hot water well was located. This contract called for the formation of a corporation to which the Hot Springs property, designated as parcel A, said parcel B and an easement and right of way over a third parcel, designated as parcel C, were to be transferred. However, title to these properties never became vested in the corporation. Then on August 1, 1941, the younger Davis assigned to his father, the plaintiff herein, his interest in the contract of July 2, 1941. This latter contract was attached to the contract of November 19, 1941, and the contract of August 27, 1940, was in turn attached to and made a part of the contract of July 2, 1941.

These latter contracts must therefore be considered in determining the rights and duties of the parties under the contract of November 19, 1941, which was made for the purpose of buying out Mrs. Stulman and vesting full ownership of the property in the elder Davis subject only to certain specified encumbrances. The important provisions of that contract are: (1) The elder Davis was to pay Mrs. Stulman $18,400, evidenced by a promissory note secured by a trust deed, for "all of her right, title and interest in and to the real and personal property, the subject matter of said agreement of

July 2, 1941''; (2) the trust deed to be received by Mrs. Stulman was ''to be a first encumbrance upon the easement on parcel C and a second encumbrance upon the real property described as parcel A in the agreement of July 2, 1941, subject only to an obligation in the principal sum of not more than $6,000 to the Hollywood State Bank, secured by a first trust deed and which the second party (the elder Davis) assumes and agrees to pay, and to tax sales and taxes for 1941-42''; (3) ''immediately upon the execution hereof an escrow shall be commenced for the purpose of vesting title in and to the property described as parcel A and the easement across parcel C'' in the elder Davis, and ''said escrow shall be expeditiously aided by each party hereto so that the transaction may be closed, if possible, by the 25th of November, 1941''; (4) upon the closing of the escrow the contract of July 2, 1941, was to be at an end except as otherwise provided; (5) Mrs. Stulman and the younger Davis were to deliver in the escrow ''a grant deed'' to parcel A; (6) a complete accounting between Mrs. Stulman and the younger Davis was acknowledged up to November 18, 1941; (7) upon receipt by Mrs. Stulman of said note of $18,400 ''secured by said deed of trust'' all of her claims in and to the assets and business are fully at an end and determined, except such rights as are evidenced by the deed of trust and the provisions of the contract of November 19, 1941; (8) Mrs. Stulman agreed to dismiss with prejudice her action in Riverside County; and (9) the sellers declared that so far as they knew there were no obligations, claims, or charges against the Hot Springs business or premises other than those which were set forth in an attached schedule. This schedule contained two items of taxes, one for $250 and the other for $385.

In keeping with the provisions of the contract of November 19, 1941, the escrow was opened in the bank that same day. As the bank was the record owner of an undivided 12/22nds interest in the property and was to receive from the elder Davis a note for $6,000 secured by a first trust deed on the entire premises, it became a party to the escrow. Its instruction, dated November 19, 1941, provided that the grant deed it was depositing in the escrow conveying its 12/22nds interest to the elder Davis could be used only when the escrow could cause to be issued ''a Beneficiary's Policy of Title Insurance'' showing the deed of trust for $6,000 to be ''a first record lien on said property,'' except certain taxes. In ac-

cordance with said instruction the bank deposited in said escrow such a grant deed and the elder Davis and wife deposited therein their $6,000 note and trust deed dated November 19, 1941. The Davises and Stulmans signed their escrow instructions on November 24, 1941. These instructions provided that the deed and other documents from the Stulmans and the younger Davis could be used only when the escrow-holder could "cause to be issued a Joint Protection Policy of Title Insurance" showing title vested in the elder Davis and his wife, "free of encumbrances" except certain taxes, conditions, etc., and a first trust deed securing a note for $6,000 and a second trust deed securing the promissory note of the elder Davis in favor of Mrs. Stulman for $18,400. The grant deed deposited in the escrow by the younger Davis and the Stulmans was in accordance with this instruction and contained practically identical exceptions with those found in the deed that the bank deposited in the escrow.

The preliminary report of the title company dated December 5, 1941, disclosed ten items which constituted defects in or clouds upon the title to various parcels of the property to be conveyed. These consisted of three tax matters, one mortgage, one defect in description, one recorded abstract of judgment, one recorded partnership agreement, and three crop mortgages. Subsequent reports were made by the title company on March 2, May 8, and September 22, all in 1942. Attempts were made to eliminate these various clouds and some were eliminated but others were added. The net result was that the defects were never cured to the point where the title company was in a position to issue its policy showing title in the elder Davis subject only to the provisions and conditions of the contract of November 19, 1941, and the escrow instructions pursuant thereto. Neither could the bank procure such policy of title insurance. At no time was there any waiver by any of the parties of any of the specified terms or conditions of the escrow instructions. The bank was never given any instructions other than the original ones until March 31, 1943, when the younger Davis wrote a letter to the bank demanding withdrawal of all documents bearing his signature on the ground that Mrs. Stulman had violated her agreement with him and because of unreasonable delay and noncompliance upon her part with the terms of the escrow. The escrow was never closed and the bank has the documents and funds deposited therein by the respective parties. In the

meantime the elder Davis spent $1,699.39 in payment of taxes on the property and other items appearing on the schedule attached to the contract and $1,000 for repairs and improvements, or a total of $2,699.36.

The judgment declares: (1) That the contract of November 19, 1941, has been abandoned by all the parties thereto and hence may not be enforced by any party; (2) that all parties to the escrow thereunder are entitled to the return of all documents deposited therein; (3) that a joint adventure in the conduct of the hotel and resort business is dissolved; (4) that the superior court of Riverside County has exclusive jurisdiction as to quieting title to the real estate and as to all matters concerning the partnership between Mrs. Stulman and the younger Davis; (5) that the contracts of August 27, 1940, and July 2, 1941, had not been abandoned or rescinded by any party thereto and remain in force; (6) that the bank upon the cancellation of the escrow is entitled to enforce its legal rights under the trust deed held by it; (7) that because some form of accounting will be required in Riverside County, in the action there pending for the dissolution of the partnership or in such other action as may be brought, no accounting was had in this action except as to moneys plaintiff paid for taxes and other items pursuant to the contract of November 19, 1941; (8) that the plaintiff is entitled to be reimbursed from the property and not otherwise for his aforesaid expenditures in the amount of $2,699.38; (9) that no lien is imposed upon the said property since such matter is within the jurisdiction of the superior court of Riverside County.

■ The first attack upon the judgment by Mrs. Stulman is that the findings of fact are too general, are conflicting and do not support the judgment. There is no merit in this contention. The findings take up 25 pages of the clerk's transcript. Examination reveals that they are both specific and in great detail. They appear to cover the issues made by the initial pleadings as well as those raised by the several cross-complaints and the answers thereto. It is difficult to see how more complete findings could have been drawn.

■ It is an established rule that all the findings should be read together and so construed as to uphold rather than defeat the judgment, and to that end the findings are to be liberally construed and any inconsistency therein is to be resolved, if reasonably possible, in favor of sustaining the judgment. (*Hotaling* v. *Hotaling,* 193 Cal. 368, 385 [224 P. 455,

56 A.L.R. 734] ; *Jones* v. *Pleasant Valley Canal Co.*, 44 Cal. App.2d 798, 806 [113 P.2d 289] ; *Agdeppa* v. *Glougie*, 71 Cal. App.2d 463, 467 [162 P.2d 944].) Reading the findings in light of these principles it cannot be said that there is any serious or substantial inconsistency therein.

The burden of appellant Stulman's argument is that the contract of November 19, 1941, only required her to convey her ''right, title and interest'' in the property to plaintiff and did not require her to give a clear title subject only to certain specific exceptions, and that the findings go no further than this. The property to be conveyed pursuant to the contract of November 19, 1941, was not specifically described in said contract nor was the interest to be conveyed by Mrs. Stulman specifically defined therein. The property to be conveyed was only described by reference to a description in the attached contract of July 2, 1941, which had attached to it and made a part thereof the contract between Mrs. Stulman and the younger Davis dated August 27, 1940. By reference to said attached contracts the description of the property to be conveyed is made certain, and it further appears therefrom that the younger Davis agreed to sell Mrs. Stulman an undivided one-half interest in said property. It is therefore clear from these contracts that it was this undivided one-half interest of Mrs. Stulman in the property that she was undertaking to sell and which the plaintiff was proposing to purchase, the younger Davis having already assigned his interest in the contract with Mrs. Stulman to the plaintiff.

The contract of November 19, 1941, does not in express terms and specifically state the character of title that Mrs. Stulman must convey in order to comply therewith. The contract is not free from ambiguity on this point. It is therefore necessary not only to examine the writing in its entirety but also the documents attached thereto and the escrow instructions executed for the purpose of carrying out the transaction, and the other facts and circumstances surrounding the parties at the time, in order to determine the character of title that was intended to be conveyed. In order to ascertain the intention of the parties in this respect we naturally first examine the primary contract of November 19, 1941. We there find that the parties declare that so far as known to them ''there are no obligations, claims, or charges against the Stulman-Davis Hot Springs, or the business or premises which are the subject matter of this agreement, other than those

which are set forth in the schedule attached hereto'' as an exhibit. This exhibit contained a list of unsecured obligations due to various workmen and material men and two items of taxes—one for $250 and the other for $385. The court found, however, that the taxes due and unpaid on the property were at least $1,000 more than those listed in said schedule. The initial title report as heretofore noted showed numerous defects in and clouds upon the title. As also indicating the character of title that was intended to be conveyed is the provision in the contract as to the character of the security that Mrs. Stulman should have for her $18,400 promissory note. The trust deed on the property was ''to be a first encumbrance upon the easement on parcel 'C' and a second encumbrance upon the real property described as parcel 'A' in the agreement of July 2, 1941, subject only to an obligation in the principal sum of not more than $6,000 to the Hollywood State Bank, secured by a first trust deed and which the second party assumes and agrees to pay and to tax sales and taxes for 1941-42.'' As previously noted the contract also provided for the immediate opening of an escrow ''for the purpose of vesting title in and to the property'' in plaintiff, and provided that Mrs. Stulman and the younger Davis should accomplish this purpose by delivering into escrow ''a grant deed.'' Pursuant to this provision of the contract they delivered into the escrow a grant deed with no words of limitation as to the title conveyed and subject only to certain taxes and restrictions, reservations, etc., of record.

The escrow instructions throw additional light on the character of title that was to be conveyed pursuant to the contract of November 19, 1941. The instructions between the bank and plaintiff provided for a deed to plaintiff of the bank's 12/22nds interest in parcel A (Lot 157) in exchange for his $6,000 promissory note to be secured by a trust deed which would be ''a first record lien on said property'' except for certain specified taxes. These instructions also provided that the bank's deed could be used only in the event there was issued a Beneficiary's Policy of Title Insurance showing the trust deed securing said note ''a first record lien.'' These instructions between the bank and the plaintiff were approved by Mrs. Stulman. In the escrow instructions between the plaintiff on the one hand and Mrs. Stulman and the younger Davis on the other the plaintiff instructed the bank to use the $18,400 note and trust deed securing the same provided there

was issued a Joint Protection Policy of Title Insurance covering said parcel A (Lot 157) showing title vested in him and his wife "free of encumbrances" with the exception of certain specified taxes. Mrs. Stulman approved these instructions also.

The foregoing references to the various documents in evidence, the conduct of the parties and the testimony of the plaintiff lend substantial evidentiary support to the trial court's determination that the title which Mrs. Stulman was to convey to the plaintiff under the contract of November 19, 1941, was to be a clear title with only certain specific exceptions, and that a mere conveyance of her "right, title and interest" in said property in the nature of a quitclaim would not be a compliance with her obligations under said contract. The findings when read in the light of the principles heretofore stated are to this effect and consequently amply support that phase of the judgment which appellant Stulman is here attacking.

The evidence herein referred to is also a complete answer to appellant Stulman's second contention to the effect that the evidence is insufficient to support the finding that she did not perform for many months certain conditions of the contract of November 19, 1941, and that she was unable to deliver a valid conveyance of her interest in said property. The title reports, the correspondence, and the oral testimony furnish abundant support for the finding that Mrs. Stulman did not comply with the conditions of said contract and that she was unable to deliver the kind of a title that the contract and escrow instructions called for and that the parties to the transaction contemplated and intended. In this connection there are two rules that must not be overlooked: (1) An appellate court must view the evidence in the light most favorable to the respondent, resolving all conflicts and indulging all legitimate and reasonable inferences to uphold the finding (*Estate of Isenberg*, 63 Cal.App.2d 214 [146 P.2d 424]; *Pewitt* v. *Riley*, 27 Cal.2d 310 [163 P.2d 873]); and (2) when a finding is attacked as being unsupported the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the determination of the trial court (*Crawford* v. *Southern Pac. Co.*, 3 Cal. 2d 427 [45 P.2d 183]; *Peri* v. *Los Angeles Junction Ry.*, 22 Cal.2d 111 [137 P.2d 441].)

Appellant's third point is that the court erred in finding that it was the purpose of the parties that the contract of November 19, 1941, should not be binding in the event the escrow could not be closed. The answer to this contention is to be found in the contract itself. It will be recalled that the contract provided for the opening of an escrow "for the purpose of vesting title" to the property in the plaintiff and that the transaction was to be expedited by all the parties to the end that the escrow would be closed on November 25, 1941, if possible, and that upon the closing of said escrow the contract of July 2, 1941, would "be at an end" except as therein otherwise provided. The November 19th contract also provided in effect that neither the contract of July 2d nor the partnership contract between Mrs. Stulman and the younger Davis should be at an end as to the claims of the parties thereto against each other and to the property described therein, until the receipt by Mrs. Stulman of the $18,400 promissory note secured by the said trust deed. From these provisions of the contract and the oral testimony the trial court could reasonably infer that it was the intention of the parties that the escrow would be closed within six days or at least within a reasonable time thereafter, that Mrs. Stulman would receive the said $18,400 promissory note and trust deed with a $25,000 policy of title insurance showing said deed of trust to be an encumbrance second only to the bank's $6,000 encumbrance and certain taxes, and that the contract of July 2, 1941, (as to which plaintiff was not a party) would be at an end, but that in the event said escrow was not closed the contract of July 2, 1941, would still be in full force and effect.

Appellant's fourth contention is that even if there were some obligation on her part to convey clear title and there were certain liens and encumbrances on the property, this would not justify abrogating or rescinding the contract. In making this argument she misconceives the effect of the conclusions arrived at by the trial court. They are not based upon the theory that the contract of November 19, 1941, was abrogated but that it was abandoned by all parties thereto and that because of the liens and other clouds upon the title it was at all times impossible for the appellant to perform said contract and escrow. In this connection, however, appellant argues that there was no default or failure of compliance on her part. On this point it is sufficient to say that the trial

court's determination of that question finds ample support in the testimony of Mr. Poggione, who was the bank's escrow officer and who testified with reference to the title company's reports of December 5, 1941, March 5, 1942, and September 22, 1942.

Appellant's fifth point is that the court erred in finding that on or about November 25, 1941, the plaintiff, appellant and the younger Davis, without waiting for the close of said escrow, entered into a joint adventure in reference to the conduct of said hotel and resort business. While the parties were waiting for the title to be cleared and the escrow to be closed intermittent attempts were made to conduct said business but without financial success. These efforts, however, ceased about September 15, 1942. In view of the entire picture of this complicated and extended transaction it cannot be said as a matter of law that such designation of this interim operation of the business was without sufficient evidentiary and legal foundation. In any event it does not appear that appellant is prejudiced by such finding since the judgment only directs that the joint adventure be dissolved. If such adventure existed it was proper that it be dissolved; if it did not exist no prejudice can result from a declaration that a non-existent joint adventure is dissolved.

Appellant's sixth point is that the trial court erred in holding that the contracts of July 2, 1941, and August 27, 1940, are still in effect and binding on the parties thereto. The contract of November 19, 1941, provided for the expeditious handling of the escrow so that the transaction could be closed, if possible, by November 25, 1941, ''and thereupon the agreement of July 2, 1941, shall be at an end except as herein otherwise provided.'' The clear implication of this provision is that if the transaction under the contract of November 19, 1941, is not closed then the contract of July 2, 1941, is not at an end. The contract of November 19, 1941, recited that a corporation had been organized pursuant to the provisions of the contract of July 2d for the purpose of acquiring the property in question, but said property had not been transferred to it. Examination, however, of the contract of July 2d discloses that upon the vesting of title to the property in the corporation then the contract of August 27, 1940, ''shall come to an end and be of no further force and effect.'' Since this event never took place and since the transaction contemplated by the contract of November 19, 1941, was never closed,

the trial court was amply justified in concluding that the two earlier contracts were still in force and effect in the absence of their not having been abandoned, rescinded or otherwise abrogated, which the court found was not the case.

Appellant's seventh contention is that the court erred in refusing to permit Attorney Danielson, who represented the Davises and the bank in connection with the escrow, to testify regarding certain conversations with Mrs. Stulman's attorney at which Mr. Poggione was also present. This testimony was apparently offered for the purpose of showing a waiver of the specific requirements of the escrow instructions covering chattel and crop mortgages and taxes. This was not error for two reasons: (1) Mr. Danielson does not appear to have been authorized by the interests represented by him to agree to any change or modification of the escrow instructions which had been executed by the parties. (2) The escrow instructions contained the following provision: "No notice, demand or changes of instructions shall be of any effect in this escrow or recognized by said bank unless given in writing by all parties affected thereby." In view of this provision the offered testimony would have been immaterial and ineffective for the purpose of showing that the escrow was ready to be closed, for the bank as escrow-holder could not have been expected or compelled to act upon merely an oral waiver. (*Carlsen* v. *Security Trust etc. Bank,* 205 Cal. 302 [271 P. 104].)

Appellant's eighth point is that the court erred in ordering a lien to be imposed on the Riverside County property to secure plaintiff's claim for moneys paid out for taxes and improvements. The complete answer to this point is that no lien was imposed upon said property. The court determined that the plaintiff was entitled to be reimbursed for his expenditures from the said property but expressly determined that "no lien is hereby imposed upon said property in favor of D. A. Davis in any sum or at all, and the imposing of such a lien as well as other matters concerning the disposition of the real property described in plaintiff's complaint herein . . . are hereby declared to be subject to the exclusive jurisdiction of the Superior Court . . . in and for the County of Riverside. . . ."

Appellant's final contention is that the court erred in permitting leading and suggestive questions. There is no merit in this contention. "The allowance or exclusion of such questions rests almost entirely in the discretion of the trial

court." (*Bruce* v. *Western Pipe & Steel Co.*, 177 Cal. 25 [169 P. 660].) No abuse of such discretion appears.

As previously pointed out the contract of November 19, 1941, is not free from ambiguity. Fifteen days were consumed in the trial of this case, some 85 exhibits were introduced in evidence and more than 800 pages of oral testimony taken in an effort to correctly interpret the contract and thus determine and declare the rights and duties of the various parties thereunder. In our view of the entire record it cannot be said that the contract is not reasonably susceptible of the interpretation placed upon it by the trial court. In such circumstances it is a well established principle of law that when the construction given an instrument by the trial court appears to be reasonable and consistent with the true intention of the parties making it, a reviewing court will not substitute another interpretation even though it seems equally tenable. (*Manley* v. *Pacific Mill & Timber Co.*, 79 Cal.App. 641, 648 [250 P. 710] ; *Adams* v. *Petroleum Midway Co., Ltd.*, 205 Cal. 221, 224 [270 P. 668] ; *Kautz* v. *Zurich etc. Ins. Co.*, 212 Cal. 576, 582 [300 P. 34] ; *Coviello* v. *Moco Fruit Co., Inc.*, 42 Cal.App.2d 637, 640 [109 P.2d 765] ; *Medico-Dental Bldg. Co.* v. *Horton & Converse*, 21 Cal.2d 411, 430 [132 P.2d 457].)

Several incidental arguments have been made by appellant in support of her main propositions which we have not specifically adverted to in this opinion. These arguments, however, have been considered. But their impotency to change the result is so apparent it is not deemed necessary to unduly extend this opinion in order to dissect and analyze them.

The judgment is affirmed.

McComb, Acting P. J., and Wilson, J., concurred.

A petition for a rehearing was denied January 9, 1946, and appellant's petition for a hearing by the Supreme Court was denied February 14, 1946. Edmonds, J., Carter, J., and Schauer, J., voted for a hearing.