[Civ. No. 18762. Second Dist., Div. Two. May 23, 1952.]

JEAN PIERRE AUMONT, as Administrator with the Will Annexed, etc., Respondent, v. SEYMOUR NEBENZAL, Appellant.

Fred Horowitz and Alvin F. Howard for Appellant.

Bautzer, Grant, Youngman & Silbert, Bernard M. Silbert and A. Fredric Leopold for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff after trial before the court without a jury in an action to recover damages for breach of a warranty agreement, defendant appeals.

Viewing the evidence in the light most favorable to plaintiff (respondent) and pursuant to the rules set forth in *Davis* v. *Stulman,* 72 Cal.App.2d 255, 262 [2] [164 P.2d 787] (Fox, J.), the record discloses the following facts:

Plaintiff's decedent, hereinafter referred to as the "actress" on October 2, 1946, entered into a contract with the Atlantic Production Company, hereinafter called the "corporation," of which defendant, hereinafter called the "producer," was the president and a large stockholder. The agreement employed the actress to perform in a motion picture sometimes entitled "Atlantis," and hereinafter called the "picture," at a salary of $100,000, of which $50,000 was to be payable during the period of service, and $50,000 payable (1) within nine months after completion of the picture, or (2) at such time as the corporation had recouped 90 per cent of the cost of its production, whichever should occur first.

On February 24, 1947, the actress at the request of the producer, in order to enable him to obtain certain financing,

executed a subordination agreement whereby she agreed not to stand on her right to request the corporation to pay her deferred compensation of $50,000 as provided in her contract, but to postpone such request until the picture was in "general release." In consideration of the actress's promise the producer agreed on February 28, 1947, that if the picture went into general release later than October 15, 1947, he personally would pay her deferred compensation of $50,000 at the time called for by the employment agreement.

On December 2, 1947, the picture was not in general release and the actress executed an extension agreement extending the condition upon which the guaranty agreement of the producer would become effective to March, 1948.

The trial court found: (1) The actress had performed her employment agreement; (2) There was no general release of the picture by March, 1948. Thereupon judgment was rendered in favor of plaintiff for the sum of $32,916, which constituted the unpaid balance of the $50,000 which the actress was to receive when the picture was generally released.

The producer (defendant) appeals, contending that there was not any substantial evidence to sustain the following findings of the trial court:

(1) That the actress (plaintiff) "did each, all and everything required by the terms of said Agreement of October 2, 1946, to be done, rendered or performed on her part . . ."

This finding was fully supported by the evidence. The actress testified that she had finished the picture, and defendant established that minor additions and changes in the picture had been completed subsequent to the time the main picture had been filmed.

There is no merit in the producer's contention that the actress failed to perform her contract of employment by not making a personal appearance when requested to do so at Las Vegas where the picture was displayed at a "test showing" during the month of March, 1948. Among other things the contract provided as follows: "The Artist further agrees that after the completion of the picture, she will appear at such times and such places as the Corporation may require unless other actual engagements of the Artist prevent the Artist from so doing."

The foregoing provision when read as it must be in conjunction with the other provisions of the contract was correctly construed by the trial court to mean that the actress

would, subject to other engagements, appear for changes to be made in the picture subsequent to the time it had been completed and that she did not obligate herself to render services in connection with the distribution or exploitation of the picture. In other words, the quoted provision of the contract merely provided that the actress, after the picture was finished, would do the usual things necessary for the perfection of the negative, such as rendering service for the completion of the picture with trick shots or added scenes.

(2) That the picture was not in general release within the meaning of the agreement of February 28, 1947 (the producer's guarantee agreement), at any time prior to the month of December, 1948.

The foregoing finding is substantially supported by the evidence. Witness Louis Shurr testified that "according to the best of my understanding, the picture was released around 1949." This evidence in connection with official documents of the United Artists Corporation received in evidence disclosed that the picture (Atlantis) was not in general release any time during 1948, and was in general release in February, 1949.

Conflicting evidence must, of course, be disregarded by an appellate court, and since the foregoing evidence which was apparently believed by the trial judge sustains the questioned findings, no useful purpose would be subserved by setting forth additional evidence which would lead to the same conclusions. (*Thatch* v. *Livingston,* 13 Cal.App.2d 202, 203 [56 P.2d 549].)

In view of our conclusion it is unnecessary to discuss any other questions presented by counsel.

The judgment is affirmed.

Moore, P. J., and Fox, J., concurred.