[Civ. No. 18811. Second Dist., Div. Two. Apr. 7, 1953.]

HAYWARD LUMBER AND INVESTMENT COMPANY (a Corporation), Respondent, v. CONSTRUCTION PRODUCTS CORPORATION (a Corporation), Appellant.

Larwill & Wolfe, Michael F. Shannon and Thomas A. Wood for Appellant.

Philip T. Lyons for Respondent.

FOX, J.—Defendant appeals from a judgment awarding plaintiff the possession of certain leased personal property (or its value) and for damages for the detention thereof.

Plaintiff was conducting a business under the fictitious firm name of Hayward-Hallett Equipment Company, which in 1948 had been losing substantial sums of money. In the latter part of that year, plaintiff and defendant entered into a contract whereby defendant agreed to take over and liquidate an inventory of parts used in the construction of hoists and compressors which plaintiff ultilized in its business. It was agreed that to accomplish this liquidation, defendant would continue the business of Hayward-Hallett Equipment Company by manufacturing and selling compressors and hoists fabricated from the parts in the inventory. To effectuate this purpose, the agreement provided that plaintiff lease to defendant the real and personal property used in the operations of the Hayward-Hallett Equipment Company. The personal property, which is the subject of this action, consisted of machinery and specialized tools requisite to the manufacture of hoists and compressors.

On July 12, 1949, the parties entered into a new agreement containing leases on the aforementioned real and personal property which was in substitution of the earlier contract. This agreement provided that the lease of the real property was to be for a term of two years, from January 1, 1949, to December 31, 1950, defendant having an option to renew the lease "from year to year from and after December 31, 1950, for an additional five year period, to December 31, 1955." The

agreement further specified that the leases of the special tooling, machine tools and other tools and supplies was "for the period from January 1, 1949, to December 31, 1950," and granted defendant an option to renew these leases "*for a period of two years* from January 1, 1951, to December 31, 1952." (Italics added.) The agreement set forth that in the event of the exercise of the renewal options, the monthly rentals would be fixed by agreement of the parties, or by arbitration upon their failure to arrive at a mutual agreement. The agreement also made provision for defendant to sell an enumerated list of hoist and compressor parts belonging to plaintiff.

Defendant took possession of the premises and machinery and tools pursuant to the leasing agreement and by the middle of 1950 had liquidated the major portion of the inventory parts through its manufacture and sale of hoists and compressors. With the advent of military operations in Korea, the properties occupied and used by defendant under its leases were enhanced in value. In July of 1950, plaintiff suggested it would like to "resume possession of the leased properties." Through its president, Frank W. Wells, defendant indicated it might move out if plaintiff sold it certain equipment. Accordingly, plaintiff gave defendant an option to buy this equipment for $10,000 on condition that defendant relinquished its lease of the premises. In August, 1950, defendant informed plaintiff of its inability to accept this option because of the unavailability of other machinery it would need to continue in business. Mr. Wells testified he had never told plaintiff he was going to leave the premises and the machine tools at the expiration of the year 1950. On October 31, 1950, plaintiff served on defendant a 30-day notice of cancellation of the agreement unless defendant fulfilled its obligation to pay certain sums accruing thereunder. On November 30, 1950, Mr. Wells avoided such a cancellation by making a payment of $1,960 to Mr. Hubbard, plaintiff's secretary. On this occasion Mr. Wells testified that "Mr. Hubbard said to me 'Obviously, after going to all the trouble to wire that money to me last night, you must be intending to stay' and I said, 'Yes, obviously.' "

On December 28, 1950, Mr. Wells wrote a letter to Mr. Hubbard, the material part of which reads: "We are continuing our lease in accordance with our lease contract for the year 1951 for the factory and the machinery and tools." The letter was delivered the following day. On January 2,

1951, plaintiff wrote a reply to the above letter reading in part as follows:

"You are hereby notified that your attempt to 'continue' the lease of our property under the agreement of June [sic] 12, 1949, is not accepted as an exercise of the option to renew the lease provisions of said contract, for the following reasons: "I. You have failed to give timely, or any notice of your intention to exercise the option to renew the lease provisions of the Agreement of June 12, 1949. II. You have failed to perform the conditions precedent to your right to exercise the option to renew the lease provisions of the agreement . . . III. You are now, and have been continuously since December 10th, in default in complying with the terms of said contract. . . . " The letter set forth that the default consisted of delinquency in the payment of rentals, and concluded with a demand that defendant surrender the real property and restore to plaintiff possession of all the personal property owned by it.

On January 3, 1951, defendant's Mr. Wells wrote plaintiff, in part, in the following terms: "I wish to acknowledge receipt of your letter dated January 2, . . . in connection with my exercising our option for the factory and machinery and tools *for the coming year of 1951.*" (Italics added.) Thereafter defendant continued to occupy the premises and retained possession and use of the machinery, offering to pay plaintiff a mutually acceptable rental. At subsequent conferences between the parties plaintiff refused to accept defendant as its tenant, reiterating the reasons previously given.

Plaintiff brought an action for unlawful detainer of the real property in January, 1951, which resulted in a judgment for defendant, subsequently affirmed on appeal. (*Hayward Lbr. & Inv. Co.* v. *Construction Products Co.,* 110 Cal. App.2d 1 [241 P.2d 1054].) In that action, the court found that defendant had properly exercised its option to renew the lease pertaining to the real property, and it was found not to have breached any of its obligations under the contract.

In April, 1951, plaintiff instituted the present claim and delivery action, to which defendant answered by pleading its lawful possession under its lease. By amendment to its answer, defendant further alleged that it had renewed its lease by written notice on December 29, 1950, and entered a plea in abatement by virtue of its favorable judgment in the unlawful detainer action, in which an appeal was then pending. At the outset of the trial, the trial court received evi-

dence concerning the plea in abatement and refused a continuance of the proceedings on the grounds that the adjudication of the issues in the unlawful detainer action was not determinative of the issues in the case at bar. In rendering a judgment in plaintiff's favor in this replevin action, the court found that on December 29, 1950, defendant made an ineffectual attempt to renew its lease for a period of one year from the date of its expiration and that this "attempted renewal was not in accordance with the terms of the agreement of July 12, 1949, and was promptly rejected by the plaintiff." The court further found that the agreement covering the personal property expired of its own force on December 31, 1950, and "that defendant did not validly exercise its option to renew said Agreement for an additional period of two years as provided therein; that there was no termination of said Agreement by plaintiff by reason of any default upon the part of the defendant."

 Defendant contends that the court erred in its construction of the letter of December 28, 1950, as an attempt to renew the lease of personalty solely for the year 1951, and as such was an insufficient exercise of the option contained therein, which provided for a renewal on a two-year basis. The disputed part of the letter reads: "We are continuing our lease in accordance with our lease contract for the year 1951 for the factory and the machinery and tools." Defendant argues that the reference to the year 1951 should be interpreted only as applying to the real property, which defendant was entitled to renew on a year-to-year basis; however, since there was but one option for a renewal covering the tools and machinery, it contends this option was properly taken up in the letter stating the lease was being continued "in accordance with our lease contract." Whatever plausibility this argument might have is greatly diminished by defendant's follow-up letter of January 3, 1951, in which Mr. Wells refers to the letter of December 28, 1950, as an exercise of "our option for the factory and machinery and tools *for the coming year of 1951*." (Italics added.) The letter of January 3d clarifies whatever uncertainty existed in defendant's notice of December 28th and confirms defendant's *proposal* to renew the lease on the personal property for only a one-year period rather than an *acceptance* of the option to extend it for two years. This later letter furnishes substantial support for the court's finding or, more accurately stated, conclusion that defendant's notice of renewal was "ineffectual."

Therefore we cannot agree with defendant that there is no evidentiary basis for the court's finding or that its construction of the instrument referred to is wrong. This is particularly true where, as here, there is extrinsic evidence clarifying the crucial document and the inferences are conflicting. In such case, where the finding of the court is compatible with the evidence, it will not be disturbed on appeal. (*Johnston* v. *Landucci*, 21 Cal.2d 63, 69 [130 P.2d 405, 148 A.L.R. 1355]; *Davis* v. *Stulman*, 72 Cal.App.2d 255, 269 [164 P.2d 787].)

■ The determination that defendant's attempted exercise of the option was not in accordance with the agreement is consistent with the settled principle, "applicable to options as to other contracts, that the offer must be accepted in the terms in which it is made, and the alteration of such terms . . . is tantamount to the rejection of the original offer and the making of a counter-offer; . . ." (*Alexander* v. *Bosworth*, 26 Cal.App. 589, 597 [147 P. 607].) ■ A striking parallel is presented in the case of *Carney* v. *Heisch*, 67 Cal.App. 465 [227 P. 780], where the lease provided for a renewal "for a period of two years." The lessee gave notice that he was exercising his option "for an additional period of one year." In rendering a judgment for the lessee, it was there stated (p. 467) : "A notice of an election to renew in order to be binding upon the lessor must state an intention to renew on such terms and for such period as are specified in the lease. If the lessee has an option to renew for a period particularly specified . . . a notice by him that he will renew for a different period . . . is nugatory and it may be ignored by the lessor. In fact, such a notice of an election to renew the lease on different terms is an offer, not to renew, but to make another lease, and it will be regarded by the law as an implied election not to renew the old lease." Plaintiff was justified, therefore, upon receipt of defendant's letter, in replying that defendant had "failed to give timely, or any," notice of intention to exercise the option. Defendant cannot complain that the court resolved the doubts arising from any ambiguity in the language chosen in the letter-notice against the author of that instrument. (*Wilck* v. *Herbert*, 78 Cal.App.2d 392 [178 P.2d 25].)

Defendant urges that the evidence shows that at various times during 1950 it gave oral notice to plaintiff of its intention to renew the lease in question. An examination of the testimony referred to does not support this claim. ■ To avail himself of an option of renewal given by a lease, a

tenant must apprise the lessor in unequivocal terms of his unqualified intention to exercise his option in the precise terms permitted by the lease. (32 Am.Jur., § 979, p. 822. See *Braun* v. *Leo G. MacLaughlin Co.,* 93 Cal.App. 116, 120-121 [269 P. 191].) The evidence cited by defendant relates to generalized and amorphous conversations between the parties regarding some immediate problem under discussion; there is no affirmative, well-defined expression on the part of defendant showing a specific intention to exercise the option in the lease upon the terms available to it. Defendant failed to sustain its burden of showing an acceptance within the requirements of the rule above stated. (See *Callisch* v. *Farnham,* 83 Cal.App.2d 427, 430 [188 P.2d 775].) Defendant further argues that no notice of intention to exercise the option was required—that a mere holding over after December 31, 1950, constituted a valid acceptance of the offer, without more. But no authorities are cited, and we have found none, which support this proposition with respect to a lease of personal property. ■ On the contrary, the rule has been stated that the hold-over doctrine of real estate leases does not apply to the hiring of personalty (8 C.J.S., p. 323), and that the mere act of retaining possession of personal property will not imply a renewal of a contract in the absence of an agreement thereto by the parties. (6 Am.Jur., § 334, p. 433.)

Defendant contends that under the facts and circumstances here present the trial court should have applied the equitable principle of relief against a forfeiture under section 3275 of the Civil Code. To this there are several answers. ■ First, if defendant wished to raise this as an equitable defense, it should have been specially pleaded in its answer. The party relying upon an equitable defense must plead it with some particularity. (*Swasey* v. *Adair,* 88 Cal. 179, 182 [25 P. 1119].) Defendant's answer does not ask relief under section 3275, nor does his answer contain any averments suggesting relief from a forfeiture was sought. (21 Cal.Jur., p. 137.) ■ Second, "[s]ection 3275 presupposes that the party seeking relief is in default, and in order to secure relief under its terms it is necessary for him to plead and prove facts that will justify its application [citing cases]." (*Barkis* v. *Scott,* 34 Cal.2d 116, 120 [208 P.2d 367].) The findings herein specifically declare "that there was no termination of the said Agreement by plaintiff by reason of any default on the part of the defend-

ant.'' Third, there is scant analogy between the present situation and the circumstances in the two decisions cited by defendant, *Kaliterna* v. *Wright*, 94 Cal.App.2d 926 [212 P.2d 32], and *Title Ins. & Guar. Co.* v. *Hart*, 160 F.2d 961, 970.) In the Kaliterna case, the lessor contended that the lessee was not entitled to renew his lease, despite the lessor's previous waiver of minor breaches. The court held that plaintiff was not in default, and so had not forfeited his option to renew. The Hart case involved the similar problem of whether a lessee guilty of certain breaches and violations of covenants in a lease had forfeited his right to exercise an option to renew, notice of which was properly given. In both of the above cases, the court provided for relief against forfeiture by a liberal interpretation of forfeiture provisions in the lease itself, which is the sound and correct application of equitable principles. In the matter at bar, however, the judgment against defendant was based upon its failure to exercise the option as required by its particular terms. ▄ An option is an offer by which a promisor binds himself in advance to make a contract if the optionee accepts upon the terms and within the time designated in the option. ▄ Since the optionor is bound while the optionee is free to accept or not as he chooses, courts are strict in holding an optionee to exact compliance with the terms of the option. (See *Wightman* v. *Hall*, 62 Cal.App. 632, 634 [217 P. 580].) ▄ By varying the terms of the option in his purported renewal, defendant in effect rejected the option, which became extinguished with the expiration of the term of the lease. Section 3275 is therefore inapplicable in these circumstances.

Defendant contends that the decision in its favor in the unlawful detainer action is res judicata of the issues in the current litigation. This is without merit. ▄ One of the principal requirements for the application of the doctrine of res judicata is: Was the issue decided in the previous action identical with the one presented in the present suit? (*Bernhard* v. *Bank of America*, 19 Cal.2d 807, 813 [122 P.2d 892].) ▄ In *Stark* v. *Coker*, 20 Cal.2d 839, 843 [129 P.2d 390], the court points out that only such matters are adjudicated in a prior judgment which appear upon its face to have been adjudicated or which were necessarily included therein, and that ''when it affirmatively appears that an issue was not determined by the judgment, it obviously is not res judicata upon that issue.'' ▄ Likewise, the rule may not be invoked merely because the rights, claims or demands arise out

of the subject matter involved in a prior litigation, so long as they constitute separate or distinct causes of action which were not placed in issue in the former case. (*Title Guar. & Tr. Co.* v. *Monson,* 11 Cal.2d 621, 631 [81 P.2d 944].)

It is thus apparent that defendant cannot properly call to his aid the principle of res judicata. The former action was concerned solely with the real estate, and the judgment settled the issue of defendant's right to renew its lease of the realty and the fact that it had given proper notice of renewal for a one-year period. In the present proceeding, the issue related to whether defendant had exercised its option to renew its lease as to the personalty, which was contained in a separate clause of the agreement between the parties and was not involved in the former action. The causes of action in the two proceedings were thus separate and distinct, although arising out of the same subject matter. Hence, a judgment in the first proceeding creates no obstacle to this proceeding for the recovery of personal property, since no issue was tendered or adjudication had thereon in the former action. (*Title Guar. & Tr. Co.* v. *Monson, supra*; *Daugherty* v. *Board of Trustees,* 111 Cal.App.2d 519, 522 [244 P.2d 950].)

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied April 29, 1953, and appellant's petition for a hearing by the Supreme Court was denied June 4, 1953.