[Civ. No. 12555.   Second Dist., Div. One.   Oct. 3, 1941.]

CAFE APOLLO COMPANY (a Corporation), Respondent,
v. AGNES MARIE ANSELM, Appellant.

Guy B. Graham and Robert E. O'Neill for Appellant.

O. H. Myrick for Respondent.

YORK, P. J.—On June 1, 1933, Leroy and Anna Holt, as owners, leased to respondent Cafe Apollo Company those certain premises in the city of Los Angeles, known and operated as Italian Village Cafe, for the term beginning on said date

and ending September 30, 1937. After expiration of said lease, respondent held over as a tenant from month to month, under the terms of the lease, until April 26, 1938, when a new lease was executed between the same parties. Before the expiration of the original lease, to-wit, on April 1, 1936, respondent sublet to appellant Agnes Marie Anselm for the period ending on September 30, 1937, certain floor space in said Italian Village Cafe at a rental of $275 per month, said sublease containing, among others, the following provisions:

"It is further agreed that Party of the Second Part (appellant) is hereby granted an option for the length of lease of First Party (Respondent), at the expiration of this contract under the same terms and conditions as hereinbefore set forth.

"If said option is accepted by the Second Party (appellant) at the expiration of this contract.

"It is hereby agreed that this contract shall expire on the same date as the present lease held by the First Party.

"This lease and concession shall begin on the First Day of April, 1936, and shall terminate on the 30th day of September, 1937."

Appellant paid the stipulated rental of $275 per month from April 1, 1936, to and including July 1, 1939, and on or about the last named date received notice from respondent as follows:

"Referring to your month to month tenancy covering a portion of the premises known as Italian Village. . . .

"Please take notice that commencing August 1, 1939, the terms of your tenancy will be changed as follows, to-wit: The rental which you will be required to pay for said premises under said tenancy will be raised from the sum of $275.00 per month to the sum of $500.00 per month, payable in advance on the first day of each month commencing August 1, 1939.

"This notice is intended to be a thirty-days notice of change in the terms of your month to month tenancy as provided by section 827 of the Civil Code of the State of California."

Appellant tendered to respondent the sum of $275 on August 1, and again on September 1, 1939, but respondent refused to accept any sum less than $500 per month, and on August 2nd, gave appellant a three day notice to pay rent or quit the premises, later commencing the instant action in unlawful detainer.

From the judgment which was entered on October 27, 1939, in favor of respondent for the sum of $1500, being rental for the months of August, September and October, 1939, at the increased rate, appellant sublessee prosecutes this appeal.

From the facts stated, it appears that the original lease and the sublease, by their respective terms, terminated on the same day, i. e., September 30, 1937, and that respondent corporation remained in possession of the premises under the original lease for a period of some seven months after such expiration, or until April 26, 1938, before a new lease was entered into between it and the owners of the property.

It also appears from the record that the only questions before the trial court were (1) the effect of the provisions of the sublease, and (2) the admissibility of certain conversations had between appellant and officers of the respondent corporation with respect to their understanding of such provisions, it being contended by respondent that under the sublease, appellant was granted an option upon the expiration of the original lease, to-wit, on September 30, 1937, "by which she could extend the term of her sublease for a period to and including September 30, 1937; in other words, as long as plaintiff's . . . lease continued in force."

Appellant took the position that the disputed paragraph meant that when respondent executed a new lease with the owners, she would have an option for a lease with the same terms and conditions as the sublease, and for the same period of time as was named in respondent's new lease. In support of such theory, appellant's counsel offered the following stipulation during the trial: "Mr. Graham: . . . if the defendant were present . . . she would testify that on or about the first day of April, 1936, she entered into a lease with the Cafe Apollo Company, Incorporated, and that lease was signed and delivered to her at that time, and at that time there were present Joseph Tadini, who was an officer of the plaintiff corporation— The Court: to-wit, secretary. Mr. Graham:— and the bookkeeper employed by the plaintiff at that time by the name of Josephine Grainitz, and the defendant. And there was a discussion at that time with reference to this lease . . . and that the defendant was asked at that time whether or not she understood what that paragraph meant, and she would testify that she said, yes, it means that when the corporation gets their new lease, I will have an option for

a lease with the same terms and conditions as this lease, and for the same period of time as the corporation will have in their new lease; and Mr. Tadini said, yes, that is what is meant by that paragraph. . . . Mr. Myrick: We stipulate to that. . . . Mr. Graham: Will counsel stipulate· that if the defendant were present, she would so testify? Mr. Myrick: Yes, I will so stipulate, but most of that we object to on the ground—we object to anything said at all with reference to what was said at the time the sublease was made, on the ground that it is incompetent, irrelevant, and immaterial, and not binding on the corporation, and it is an attempt to vary the terms of a written instrument by parol testimony. We contend that everything is deemed to be merged in the lease at the time it was made. The Court: Is there any ambiguity about that clause of the lease that Mr. Graham has referred to? Mr. Myrick: It is very ambiguous, yes, but it is written in there and she took it for what it was worth.''

The trial judge reserved his ruling on the respondent's objection to the admission of the evidence by stipulation until he had decided the case.

Subject to such objection, appellant's counsel made the following offer: ''Now, if Joseph Tadini were present and called as a witness . . . (he) would testify that he heard that conversation. . . . If the defendant were present, she would testify that after the plaintiff obtained a new lease she asked Joseph Tadini if she was to get a new lease, and he answered, no, you have a lease for the same length of time as we have. That was after they had obtained their new lease . . . about one month after the plaintiff had obtained a new lease.''

''The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.'' (Sec. 1638, Civil Code.) ''A ·contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties.'' (Sec. 1643, Civil Code.) ''A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.'' (Sec. 1647, Civil Code.)

Respondent admits the disputed paragraph is ambiguous, but insists that appellant is nevertheless bound by it. Ap-

pellant's term under said sublease ran from April 1, 1936, to and including September 30, 1937. Respondent's original lease with the owners of the property ran for a term from June 1, 1933, to and including September 30, 1937. Why, then, should appellant be interested in procuring an option (as is contended by respondent) "by which she could extend the term of her sublease for a period to and including September 30, 1937," something which she already had under the terms of her sublease?

A reading of the disputed paragraph of the sublease readily discloses that it has little, if any, meaning, unless it refers to the so-called "new" lease between respondent and the owners of the property. It would therefore appear to be proper to resort to extrinsic evidence for the purpose of explaining what was actually intended by the parties at the time when the sublease was executed. As was pertinently stated in *Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221, 225 [41 Pac. 876]: "This is not allowing parol evidence for the purpose of varying or altering the contract, or of putting a different sense and construction upon its language from that which it would naturally bear, but for the purpose of showing the circumstances under which the language was used, and applying it according to the intention of the parties."

From the facts and circumstances shown by the record herein, it would appear that the most reasonable interpretation of the paragraph in question is that upon expiration of appellant's sublease, she was given the right to a renewal thereof for a term concurrent with that of respondent's "new" lease, provided the option for such renewal was accepted by appellant when said sublease by its terms expired. It is admitted that appellant remained in possession and paid the stipulated rental of $275 per month for nearly two years after the expiration of her sublease. Such payment of the rental and its acceptance by respondent constituted an exercise of such option by appellant. As a result, the trial court's finding to the effect that appellant, ever since April 1, 1936, has used and occupied, and does now use and occupy said floor space, "as such month to month tenant," is not supported by the evidence.

For the reasons stated, the judgment is reversed.

Doran, J., and White, J., concurred.