No. 15,934.

Nicklis et al. *v.* Nakano et al.

(195 P. [2d] 723)

Decided June 14, 1948.   Rehearing denied July 6, 1948.

Mr. F. W. Harding, for plaintiffs in error.

Mr. J. H. Boutcher, for defendants in error.

*In Department.*

Mr. Justice Luxford delivered the opinion of the court.

We will herein refer to the parties to this action as plaintiffs and defendants, as they appeared in the trial court.

Plaintiffs, the owners of a rooming house, sued defendants, lessees of the same, for possession, alleging

that their written lease had terminated. The court found the lease had not terminated and rendered judgment for defendants. Plaintiffs bring the case here alleging error.

July 6, 1943, a printed form lease was executed by plaintiffs to defendant Mrs. George J. Nakano for a term of three years from twelve o'clock noon on the 27th day of July, 1943, at a rental of $85.00 a month payable in advance on or before twelve o'clock noon on the 27th day of each calendar month on premises known as 2143 Arapahoe street, in Denver. The following was typewritten in the lease: "The first and last months rent to be paid in advance. The Lessee to have the privelige [privilege] of another five years on the same terms and conditions if he so desires." A paragraph in the printed lease provided: "It is mutually agreed that if after the expiration of this lease, the lessee shall remain in possession of said premises, and continue to pay rent without written agreement as to such possession, then such lessee shall be regarded as a tenant from month to month at a monthly rental, payable in advance, equivalent to the last monthly installment hereunder."

Plaintiffs, during the three years following the execution of the lease, waived the strict performance of the requirement for the payment of rent and received and accepted rent checks which did not reach plaintiffs until after the hour and day designated in the lease for payment.

In June 1946, plaintiffs accepted from defendants, and cashed, a check for $85.00. At the time said check was cashed by plaintiffs, the rent for the month of July 1946 had theretofore been paid under the terms of the lease, that the first and last months' rent be paid in advance. July 27, 1946, the tenants sent plaintiffs another check for $85.00 and thereafter continued in possession of the premises. The check last above mentioned was returned to defendants by plaintiffs' attorney, being enclosed in a letter in which it was stated that defendants had not, prior to twelve o'clock noon on July

27, 1946, notified plaintiffs of their desire to continue in the occupancy of the property, and requesting that plaintiffs be informed as to whether or not defendants desired to continue occupying said property as month to month tenants at a monthly rental of $150.00. Defendants' attorney replied that defendants were occupying the premises under the lease at $85.00 a month and that they were "ready and willing to pay the rental reserved under the lease."

It appears from the terms of the lease involved herein that no written notice of intention to extend the lease was required. The check dated July 27, 1946, sent by defendants to plaintiffs, and which was returned by plaintiffs' attorney, reached plaintiffs before their attorney sent the letter on August 2, 1946, advising defendants that the old lease was terminated and demanding a rental of $150.00 per month. In other words, before plaintiffs had indicated to defendants that they wished to terminate the lease, they had been advised by said defendants that it was their intention to extend the lease, and this because of the fact that they were in possession of the premises and had tendered the rental as provided in the lease under which they had occupied the premises for the preceding three years.

I. Continued possession and tender of rent sufficiently indicated defendants' desire to extend the lease. "It has been decided in numerous cases that if the lessor gives the lessee the right to an extension of the term, and does not specifically require him to give notice of his election to avail himself of such right, his mere continuance in possession after the original term is to be regarded as showing his election to that effect. 'Such a notice, had it been given, would have been a notice only of the lessee's intention to continue the same occupation, upon the same terms as before. And upon principle it would certainly seem that the actual continuance of such occupation was the best and most conclusive evidence of

his intention to continue.' " Tiffany, Landlord and Tenant, vol. 2, p. 1526, §222.

In the case of *Stout v. Tobias,* 27 O. App. 113, 160 N. E. 874, the court said: "The lease itself contains no provision requiring the tenant to give notice of his election to hold for the extended term. The rule applicable in such cases is stated in 16 Ruling Case Law, 894, as follows:

\* \* \*

" 'It is the generally recognized rule that, where a lease provides that the tenant may have, at his option, an extension for a specified time after the expiration of the term agreed upon in the lease, or may occupy for an extended term, including the term specified, the mere holding over after the expiration of the specified term will constitute an election to hold for the additional or extended term, and the tenant, after holding over beyond the first term without any new arrangement, is bound for the additional or extended term as fully and completely as though that term had been originally included in the lease when executed. The reason for this is that, upon the exercise of the privilege for the extended term evidenced by the holding over, the original lease becomes a present demise for the full extended term. \* \* \* Likewise, it is held that where a lessee, having a general privilege of extending the lease, holds over, even without any notice to the lessor of his election to extend the lease for the further term, his holding over constitutes such an election, and he is entitled as against the lessor to hold for the further term.'

\* \* \*

"The authorities are substantially uniform that, where the tenant has the privilege of an extension, no notice is necessary and the election is exercised by simply holding over." See, also, vol. 2, Underhill on Landlord and Tenant, p. 1362, §803.

■ II. The typewritten portion of the lease.

As we have noted heretofore, defendants under the

written lease had an option of an extension of the same for a period of five years, " if he so desires." If there is any inconsistency between this paragraph and the printed wording in the lease quoted, supra, regarding a month to month tenancy, then the typewritten provision should prevail. On this subject we held in *American Surety Co. v. Empson*, 39 Colo. 445, 447 (89 Pac. 967): "When written and printed provisions in a contract cannot be reconciled, the written provisions prevail. 'The written parts are "the immediate language and terms selected by the parties themselves for the expression of their meaning," and accordingly must control in case of conflict.' — 2 Page on Contracts, §1119; Beach on the Modern Law of Contracts, §728." See, also, *Bechmann v. Taylor*, 80 Colo. 68, 71, 249 Pac. 262.

Defendants' desire to extend the lease as provided by its terms was clearly indicated by their continuing in possession and tendering the monthly rental stipulated therein.

The judgment is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE JACKSON concur.