[Civ. No. 5831. Fourth Dist. July 3, 1958.]

STELLA M. BUCK et al., Respondents, v. F. K. CARDWELL et al., Appellants.

Cameron & Foushee for Appellants.

Buttermore & Lightner for Respondents.

MUSSELL, Acting P. J.—This is an action to quiet title, for specific performance and declaratory relief in which plaintiffs seek to have the rights and obligations of the parties to a lease of a restaurant in San Diego determined. The written lease involved was executed on May 1, 1950, by and between F. K. Cardwell and Eloise Cardwell, parties of the first part, and Albert H. Buck and Stella M. Buck, parties of the second part. Parties of the first part agreed therein to lease the restaurant involved to second parties for a term of five years, commencing May 1, 1950, at a monthly rental of $300, plus an additional sum of 5 per cent on all gross sales over $4,000 per month. There was a provision against subletting and the making of alterations without the written consent of first parties and second parties agreed to keep the property in good order and condition. The lease also contained the following provision: ''The first parties shall pay all taxes on property, equipment and fixtures covered by this lease, *for the first five (5) years and thereafter during the life of this lease* but the second party shall pay all taxes in excess of the amount assessed on the first five years.'' (Italics ours.) The lease further provided: ''An additional five year lease at the same rental and terms as this lease will be granted provided all the terms and provisions of the above lease have been complied with.''

Second parties took possession of the restaurant and operated it under the lease and thereafter until on or about December 5, 1956, when the Cardwell Corporation caused to be mailed to second parties a notice that their lease had terminated and a demand for surrender and possession of the premises in 30 days from the date of receipt of said notice. Second parties then filed the present action for a determination of their rights under the agreement.

The trial court rendered judgment decreeing that the lease involved was in accordance with the terms thereof renewed and extended from May 1, 1955, for a term as therein provided, to wit, to and including April 30, 1960. Cardwell Corporation (the successors in interest of defendants F. K. Cardwell and Eloise Cardwell) and F. K. Cardwell appeal therefrom. The principal question to be here decided is whether the

judgment extending and renewing the lease to April 30, 1960, is supported by the record.

During the month of February, 1948, Albert Buck commenced operation of the restaurant involved on a month to month basis. Shortly prior to May 1, 1950, Albert contacted defendant F. K. Cardwell regarding the leasing of the premises for a period of five years and, after several discussions, the lease here involved was executed.

Prior to May 1, 1950, Albert and his wife Stella had been having marital difficulties and on May 18, 1950, Stella brought a divorce action against him. Thereafter Albert assigned his interest in the lease to Stella and the lease was awarded to her in the interlocutory decree of divorce which she obtained. Shortly after the divorce action was commenced Albert discontinued his management of the restaurant and thereafter Stella, with the knowledge and consent of F. K. Cardwell, operated and conducted the business until on or about December 5, 1956.

Prior to the expiration of the first five year term of the lease Stella several times requested of defendant F. K. Cardwell an assurance that she would be granted the additional five-year term provided for in the lease. She testified in this connection that Cardwell did not refuse to give her a new lease, that "All he ever said was, 'We will discuss it later, Stella, I haven't much time right now.', or, 'We will make some arrangements later on' "; that she continued to ask Cardwell for a lease after May, 1955, and continued to occupy the premises, paying the same monthly rental as provided in the lease of May 1, 1950, all with the knowledge and consent of Cardwell.

The record shows that on or about November 19, 1951, defendant Eloise Cardwell transferred all her right, title and interest in and to the leased premises to defendant F. K. Cardwell, who then, on September 12, 1955, transferred his interest therein to defendant Cardwell Corporation, one of the appellants herein.

The first point raised by appellants is that the court prejudicially erred in its rulings on the pleadings. The complaint herein contains three causes of action, stated in separate counts: the first, to quiet title, the second, for specific performance, and the third, for declaratory relief, and it is contended that the cause of action to quiet title and the cause for specific performance were completely contradictory; that

the court erred in overruling defendants' demurrer and motion to strike; and that plaintiffs should have been compelled to elect which cause of action they desired to proceed upon when the demurrer was overruled. We find no reversible error in this connection.

█ Section 427 of the Code of Civil Procedure permits the joinder of causes of action arising out of contracts, express or implied, or based on claims arising out of the same transaction, or transactions connected with the same subject of action. In the instant case all causes of action arise out of the written contract of lease between the parties. Ownership by plaintiffs of the leasehold is alleged, the adverse claims thereto by defendants are therein set forth, and the existence of the controversy as to the proper interpretation of the lease is also alleged. █ It is proper practice to ask for inconsistent remedies and when the evidence is all in, it is for the court to say to which remedy, if any, plaintiff is entitled. In *Tiedje* v. *Aluminum Taper Milling Co.*, 46 Cal.2d 450, 452 [296 P.2d 554], the amended complaint contained three counts: (1) for declaratory relief; (2) to quiet title; and (3) for voiding an illegal sale of stock. It was there held that these counts relied upon the same facts as the basis for plaintiff's claimed right to recover certain corporate stock and accordingly, they were treated as one. In the instant case the same facts are relied upon by plaintiffs to obtain the relief sought and no prejudicial error resulted in the rulings of the trial court.

The argument that the court erred in failing to require plaintiffs to elect which cause of action they relied upon for relief is without merit. █ In *Tanforan* v. *Tanforan*, 173 Cal. 270, 274 [195 P. 709], it was held that since inconsistent causes of action may be pleaded, it is not proper for the judge to force upon the plaintiff an election between those causes of action which he has a right to plead; that plaintiff is entitled to introduce his evidence upon each and all of these causes of action, and the election or the decision as to which of them is sustained, is, after the taking of the evidence, a matter for the judge or jury.

Appellants claim that the court denied their right to cross-examine plaintiff Stella Buck concerning the issues raised by the pleadings. However, an examination of the record shows that appellants presented all of their affirmative defenses and that Stella Buck was extensively cross-examined with reference thereto.

█ Appellants argue that plaintiffs' fraud bars their re-

covery. This contention is likewise without merit. The trial court found that "It is not true that said lease or the execution thereof was induced by fraud or misrepresentation on the part of the plaintiffs, or either of them." This finding is supported by substantial evidence. Appellants' argument in this connection is that the Cardwells were led to believe that Albert Buck would operate the business under the lease. However, both Albert and Stella were named in the lease as lessees and it is not provided therein that the restaurant should be operated by Albert alone. Moreover, the Cardwells knew soon after the execution of the lease that Albert was not taking an active part in the management of the business and that it was being operated by his wife. The Cardwells elected to receive the rents and enjoy the benefits of the lease during the term thereof and consented to the operation of the business by Stella Buck. Appellants cannot now claim fraud in the execution of the lease agreement of May 1, 1950.

 Appellants claim that the plaintiffs' right to a renewal of the lease could only exist provided all the terms and conditions of the lease were performed and that plaintiffs failed to perform the terms and conditions thereof in several particulars. In this connection appellants claim that there was an assignment of the lease by Albert contrary to its terms. However, the assignment was simply a settlement of community property rights as between Albert and his wife, made effective by the court in the interlocutory decree of divorce. Under these conditions the covenant against assignment was not broken. (*Trubowitch* v. *Riverbank Canning Co.*, 30 Cal.2d 335, 344 [182 P.2d 182].) Appellants claim that Albert abandoned the lease and that there was no consideration to support it. However, the record shows that the rent was paid and accepted during the entire time the property was occcupied by plaintiffs and while Albert did not manage the business, it was operated efficiently by his wife. While there was a conflict in the evidence as to a breach of the lease in some particulars, the trial court found that the leased premises were not abandoned; that alterations were not made without the consent of the lessors; that it was not true that necessary repairs were not made as contemplated by the lease; that it was not true that the dining room was operated in an untidy or unsanitary manner; that it was not true that satisfactory monthly reports to the lessor were refused; and that it was not true that the payment of increased taxes, if any,

had been refused. These findings are supported by substantial evidence and cannot be disturbed.

It is argued that the payment of the rent did not automatically renew the lease. There is some uncertainty in the terms of the lease as to whether a new lease was contemplated at the expiration of the first five-year term. In one part of the lease the parties provided for the payment of taxes "for the first five years and thereafter *during the life of this lease* and in another part it provides that "An additional five year lease at the same rental and terms as this lease will be granted provided all the terms and conditions of the above lease have been complied with. (Italics ours.) ▋ It is generally held that in construing provisions of a lease relating to renewals, if there is any uncertainty, the tenant rather than the landlord is to be favored. (*Erickson* v. *Boothe,* 79 Cal.App.2d 266, 272 [179 P.2d 611].) The court impliedly found that all of the terms and conditions of the original lease had been performed and, whether the original lease was renewed or a new lease executed, *the same terms and conditions in each event* were agreed upon by the parties. The trial court's judgment that the lease "was in accordance with the terms thereof renewed and extended from May 1, 1955, for a term as therein provided, to wit, to and including April 30, 1960" is supported by the record.

Judgment affirmed.

Griffin, J., and McCabe, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.