[Civ. No. 23129.   Second Dist., Div. Two.   Dec. 17, 1958.]

ALFRED C. ROBERTS, Respondent, v. ALEXANDER SALOT, Appellant.

Max Tendler for Appellant.

Jack C. Stevenson for Respondent.

ASHBURN, J.—Defendant appeals from a judgment declaring that any title which he holds to property known as 283 Colwood Avenue, in the city of Puente, is held in trust for plaintiff and directing that he deed same to plaintiff free of encumbrance upon payment to defendant of the sum of $2,126.66. The only contention made on behalf of appellant is that the evidence is insufficient to support the findings.

The reviewing court is governed by the following rules: "The appellate court must accept as established all facts and all inferences favorable to respondent which find substantial support in the evidence. 'And where appellant urges the insufficiency of the evidence to sustain the findings . . . the rule is that, "Such contention *requires defendants to demonstrate* that there is no substantial evidence to support the challenged findings." (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].) (Emphasis added.) It is said in *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183], that: "It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more infer-

ences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deduction for those of the trial court.'' ' (*Hartzell* v. *Myall*, 115 Cal.App.2d 670, 673 [252 P.2d 676].)'' (*New* v. *New*, 148 Cal.App.2d 372, 383 [306 P.2d 987].)

Thus viewed, the evidence is sufficient to establish controlling facts favorable to plaintiff. He owned and resided in the premises above mentioned. In January, 1955, in order to assist his daughter, Mrs. Alice Berryman, he borrowed from First Federal Savings and Loan Association $2,000 upon a note secured by trust deed upon the property. He gave the proceeds to the daughter, who agreed to keep up the payments on the loan. This she did for a while but became delinquent sometime in the year 1956, the loan being by the middle of the year some six months in arrears, an aggregate of $120. In October of that year the loan association gave plaintiff written notice of default and intention to sell. He contacted his daughter who told him she would take care of it. Mr. Roberts was 70 years old, apparently in poor health and of limited education, so he left the matter to the daughter to work out through another loan upon the property. She thus became his agent and was in full charge of saving the property from foreclosure; ''I was letting my daughter take care of the whole thing.'' Her efforts to secure a new loan were unsuccessful and finally she was referred to defendant.

About the first of October she telephoned him, asking about his making a loan to bring the payments up to date and he said to come to his office and pick up the papers. This she did forthwith. He had forms at hand and prepared a note for $710 and trust deed running from plaintiff to the daughter, with an assignment on the back of the note transferring note and trust deed to defendant. This she signed on that occasion in defendant's office. He told her that she could pay this second lien note at the rate of $35 a month. Then Mrs. Berryman took the documents to her father, had him sign them and had the trust deed notarized. Later she tried to contact defendant in order to further clarify the transaction in her own mind but was unable to reach him before the evening of October 16th. The sale was set for the 17th. He told her that ''it is kind of late, but I will take care of the papers.'' She further testified: ''Q. Did he tell you what this note was for? A. Well, it was for a second trust deed to bring the payments up to date to First Federal, the payment that was

past due." Also: "Q. Mrs. Berryman, at any of the conversations that you had with Mr. Salot, isn't it a fact that he told you that he does not lend money? He would only buy property or trust deeds? . . . A. No. What he told me was he was making this loan here. . . . A. Well, he told me that—how much was past due and how much would—he said that there was costs and stuff on that and that then it was all added up and it was the amount that was on the loan." Defendant had previously contacted the loan company and had verified the amount past due. He testified that he gave Mrs. Berryman $100 in cash for the assignment of the trust deed, obtaining no receipt therefor and asking for none. She denied this and said that he paid her nothing. Defendant further testified that he gave nothing to plaintiff Roberts for the trust deed or its assignment. The court specifically found that defendant "paid neither the plaintiff nor the plaintiff's daughter, Alice Berryman, nor anyone else, any sum of money or any other consideration of any nature whatsoever, for said second deed of trust." Mrs. Berryman relied upon defendant's promise to bring the payments up to date and the evidence shows that the holder of the first trust deed would have consented to a curing of default in that manner and at that late date.

Defendant having paid no cash for the trust deed, the only consideration for same was his promise to cure the default and thus forestall the foreclosure sale. His immediate failure to perform (which occurred within 24 hours) furnishes cogent evidence that he never intended to do so. (*Longway* v. *Newbery*, 13 Cal.2d 603, 611 [91 P.2d 110] ; *Williams* v. *Hasshagen*, 166 Cal. 386, 392 [137 P. 9] ; *Kejr* v. *Construction Engineers, Inc.*, 128 Cal.App.2d 396, 400 [275 P.2d 529] ; *Jarkieh* v. *Badagliacco*, 75 Cal.App.2d 505, 507 [170 P.2d 994].)

On the 17th defendant drove by the property, made an appraisal sufficient for his own purposes and went thence to the sale. He bid it in for $2,875, but as he later stated to plaintiff's attorney, Mr. Netzley: "[T]hat figure that was bid did not represent his total expenditures in purchasing the property because he had to some sums to the fellows that were bidding on the same property so that he would be able to purchase it." He also told the attorney that he had had an offer of $6,500 for the property and would resell it to plaintiff Roberts for $4,500. Defendant himself placed a first lien of $2,650 upon it and a second of $3,250. The court found

the value to be not less than $5,000. This chilling of bidding constituted a fraud upon plaintiff and rendered the sale subject to rescission by him. (*Jenkins* v. *Frink,* 30 Cal. 586, 591-592 [89 Am.Dec. 134]; *Packard* v. *Bird,* 40 Cal. 378, 383; *Crawford* v. *Maddux,* 100 Cal. 222, 223, 225 [34 P. 651]; 6 Cal.Jur.2d § 15, p. 434; 5 Am.Jur., § 27, p. 464; 30A Am. Jur., § 99, p. 958, § 98, p. 958; 7 C.J.S., § 7(e)(7), p. 1255; 50 C.J.S., § 22 d, p. 608.)

On the same day as the sale but after its completion defendant recorded the second trust deed which he had received from Mrs. Berryman and later used it as a basis for demanding from Title Insurance and Trust Company, as trustee under the first trust deed, the surplus of $748.34 arising from the foreclosure sale. Having breached the promise which formed the only consideration for assignment of the second trust deed to him, and having paid no money for it, defendant had only nominal title thereto. However, he represented to Title Insurance and Trust Company that he was the owner of that second lien and entitled to receive the surplus. Having been told that he should get a release from Roberts, defendant went to see him on November 4th, told him that he, defendant, was the owner of the property and wanted a release signed. When plaintiff demurred, defendant said: "You've got no rights left in the place anyway"; "Don't make no difference whether you sign the papers or not"; "You will just save yourself some trouble if you do." Plaintiff knew nothing of the existence of a surplus from the sale or of his own right to claim it if one there was. Though he read the instrument, he, with his limited education and his ignorance of the fact of a surplus, did not understand its full import and signed it believing he had lost the property and that the document referred to his surrendering possession or paying defendant $20 a month as rent. Plaintiff explained: "[T]hese legal documents, I get so confused when I read them that I don't know what they mean or anything about them. . . . [T]his is the first legal procedure I was ever in in my life." Defendant then collected the surplus from the trustee and again encumbered the property as above stated.

Clearly a constructive trust arose in favor of plaintiff pursuant to section 2224, Civil Code, which says: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the

thing gained, for the benefit of the person who would otherwise have had it.''

This release was signed about November 5, 1956; plaintiff gave notice of rescission on January 7, 1957, and filed this action on February 5, 1957. There was no undue delay on plaintiff's part. Although he negotiated with defendant in November for a repurchase and his attorney made a formal offer, nothing came of it, no estoppel or waiver of the fraud grew out of it, and indeed it is not contended that there was any such equitable defense available to defendant.

Defendant testified that his occupation consisted primarily of ''buying distressed property''; his hand was undoubtedly faster than the eyes of plaintiff and his daughter, but not fast enough to escape the penetrating gaze of the trial judge.

Most of the arguments made by appellant's counsel are directed toward specific findings and the claim that they are not supported by the evidence. The burden of the argument is that the court found that plaintiff was induced to do certain things and plaintiff was defrauded, that this could not be so because plaintiff did not personally participate in any transactions with defendant. The following are examples: ''Finding Paragraph III is not supported by evidence in the further particular wherein the Court finds that the plaintiff-respondent, in consideration of defendant-appellant's promise, executed the second deed of trust to his daughter''; ''The evidence clearly shows that there was no understanding or agreement of any kind or nature whatsoever at any time between the plaintiff-respondent and the defendant-appellant''; ''The evidence clearly shows that there was no agreement or understanding at any time or on October 16, 1956, the night before the sale which was to be held on October 17, 1956, between the defendant-appellant and the plaintiff-respondent.'' ▆ These contentions ignore the fact that although the daughter had the direct dealings with defendant she was acting as plaintiff's agent throughout. A fraud worked upon her by misrepresentation or by silence was worked upon her principal and he has a right of action for redress. (*Lewis* v. *McClure,* 127 Cal. App. 439, 447 [16 P.2d 166]; *Simone* v. *McKee,* 142 Cal.App. 2d 307, 313 [298 P.2d 667]; *Odell* v. *Frueh,* 146 Cal.App.2d 504, 509 [304 P.2d 45]; 23 Cal.Jur.2d, § 32, p. 78; 2 Am.Jur. § 385, p. 302; 23 Am.Jur. § 181, p. 1001; Rest., Agency 2d, § 315, p. 56.)

The judgment requires modification in one respect. It declares that any title that appellant holds to the subject

property is held in trust for plaintiff and "[t]hat the defendant within 30 days after the signing of this decree execute and deliver to the plaintiff a quitclaim deed or other sufficient deed conveying to the plaintiff the above entitled property free of any encumbrance placed thereon by defendant, upon payment by plaintiff to defendant of $2,126.66." Appellant testified that he bid in the property for $2,875 and in the latter part of October obtained a loan of $2,650 from Valley Savings and Loan upon a first trust deed; that he also placed a second lien of $3,250 on the property, payable at the rate of $30 a month; that there is approximately $2,500 outstanding on the first lien; that the second was given as security for another obligation of his; that he received $2,650 less expenses upon the first trust deed; that the second lien was, as far as he was concerned, an accommodation security which he could "take off any time"; "I can substitute that, yes."

A question thus arises whether appellant will be able upon affirmance of the judgment to convey the property "free of any encumbrance placed thereon by defendant." If he cannot do so or claims inability to comply, additional and complicated litigation may ensue in order to assure to plaintiff the relief to which he is now entitled. Accordingly the judgment is modified by adding to paragraph 2 thereof the following language: "In the event that defendant, upon or after the time that this judgment becomes final, is unable to convey or claims that he is unable to convey title free of said encumbrances, he shall forthwith pay to plaintiff the full amount of principal and interest then due upon either or both of said encumbrances which he cannot remove or claims he cannot remove from the premises, plus any taxes which have become payable since defendant's purchase of the property and remain unpaid; but defendant will be entitled to offset against said last mentioned sums the aforesaid amount of $2,126.66."

As thus modified the judgment is affirmed. Respondent to recover costs on appeal.

Fox, P. J., and Herndon, J., concurred.