[Civ. No. 23412. Second Dist., Div. Two. Apr. 30, 1959.]

AUGUST CICINELLI et al., Respondents, v. GENICHIRO IWASAKI et al., Appellants.

[Civ. No. 23413. Second Dist., Div. Two. Apr. 30, 1959.]

GENICHIRO IWASAKI et al., Appellants, v. ANFA PRODUCTS, INC. (a Corporation), Respondent.

Welburn Mayock and Hugh E. MacBeth, Jr., for Appellants.

Ronald ·C. Roeschlaub and Walter J. McLellan for Respondents.

HERNDON, J.—Appeals are here taken from the judgments rendered in two unlawful detainer actions which were consolidated for purposes of trial. The real property involved is located in Los Angeles County and consists of certain lots on which there is a food market building with a parking area.

In 1947 the owners, August and Fay Cicinelli, leased the property to one Kurtzman for a term of 10 years ending December 31, 1956, with an option in the lessee to extend the lease for an additional term of five years at an increased rental. This lease will be referred to hereinafter as the

"Kurtzman" lease. Later in the same year Kurtzman subleased a portion of the premises to Anfa Products, Inc., respondent herein, for a term also ending on December 31, 1956, but with an option in the sublessee to extend the sublease for an additional five years at a rental to be increased in proportion to any increase provided for in the extension of the master lease. This option was expressly conditioned upon an exercise of the lessee's option to extend the Kurtzman master lease. The Cicinellis executed a written approval of the sublease, and as a part thereof, provided that if they terminated the master lease because of the lessee's default, they would lease the sublet portions of the premises directly to Anfa.

In 1948 Kurtzman assigned his interest in the master lease to Mr. Kiro Nagano who operated the produce department on the premises. Early in 1956 Nagano discussed with Cicinelli the option provisions of the Kurtzman lease. Nagano indicated to Cicinelli that he contemplated the sale of his produce business and his interest under the Kurtzman lease to Genichiro, Naomi, and Shogo Iwasaki, appellants herein. During May or June of 1956, appellants commenced negotiations with Cicinelli for a new master lease to commence on January 1, 1957, and to run for 10 years from that date. Although no agreement had been reached, a draft of a proposed lease had been examined by Cicinelli's attorney as early as June 22, 1956.

On June 26, 1956, Anfa sent Nagano, its sublessor, a notice of its exercise of its option to extend its sublease, and on June 30, 1956, Nagano sent a check for $1,040 to the Cicinellis. It should be noted at this point that the trial court found, upon evidence hereinafter more fully discussed, that Nagano's act in sending this $1,040 check was intended, and effective, to constitute an exercise of the lessee's option to extend the Kurtzman lease.

Thereafter, on July 7, 1956, the Cicinellis, as lessors, and appellants, as lessees, executed a new lease for a 10-year term commencing January 1, 1957. This lease will be hereinafter referred to as the "Iwasaki" lease. On July 30, Nagano assigned his interest in the Kurtzman lease to appellants in connection with the completion of their purchase of his produce business.

On September 13, 1956, Anfa sent to appellants and to the Cicinellis another notice of its option to extend its sublease. On September 28th appellants advised Anfa that they

had secured a new master lease and did not intend to exercise the option to extend the Kurtzman lease.

On January 3, 1957, appellants filed their complaint against Anfa for unlawful detainer to recover possession of the subleased premises on the theory that Anfa's rights had terminated on December 31, 1956, with the expiration of the Kurtzman lease. Appellants alleged that they were entitled to possession of the premises by virtue of the Iwasaki lease executed on July 7, 1956.

Anfa's answer to this complaint pleaded two separate and distinct defenses: (1) that Anfa was entitled to possession of the subleased premises for the succeeding five years by virtue of the fact that on or about July 1, 1956, the lessee, Nagano, had exercised his option to extend the Kurtzman lease for five years and that contemporaneously Anfa had exercised its option to extend under the provisions of its sublease; and (2) that the Iwasaki lease of July 7, 1956, had been rescinded by the owners and lessors (the Cicinellis) upon the ground that they had been induced to execute the new lease by appellants' fraudulent representations to the effect that Anfa would be granted a new sublease. Thus, Anfa asserted that appellants had no right to possession of the premises by virtue of either the Iwasaki or Kurtzman lease.

Thereafter, on February 11, 1957, the owners, Fay and August Cicinelli, filed an action against appellants, the Iwasakis, stating one cause of action for unlawful detainer and a second for declaratory relief, alleging that the Iwasaki lease of July 7, 1956, had been effectively rescinded on the ground of fraud. Over appellants' objection the two causes were consolidated for purposes of trial. They were brought to trial before a judge sitting without a jury.

In appellants' action against Anfa the trial court found in substance that the lessee, Kiro Nagano, had exercised the option under the Kurtzman lease and that the sublessee, Anfa, had exercised its option under the sublease so that Anfa was entitled to possession of the subject premises for a term of five years from January 1, 1957. Judgment in favor of Anfa was accordingly entered in that action. In the second action the court found that appellants were innocent of fraud and entered a judgment determining that the Iwasaki lease was valid and subsisting, and that as against the plaintiff owners appellants were lawfully in possession thereunder.

As we have indicated, appellants have noticed appeals from both judgments. But since the judgment in the second

action is in all respects favorable to them, and since they have made no attack upon that judgment or upon any finding or holding which underlies it, their appeal therefrom does not lie. It is clear that a party is not aggrieved by, and cannot appeal from, a judgment which is entirely in his favor. (*Cook v. Stewart McKee & Co.*, 68 Cal.App.2d 758-762 [157 P.2d 868] ; *Estate of Funkenstein*, 170 Cal. 594, 595 [150 P. 987] ; see 3 Cal.Jur.2d 568, § 111 and 3 Witkin, California Procedure, 2182, § 35.) When the prevailing party attempts to appeal from such a judgment, the appeal may be dismissed (*Coburg Oil Co. v. Russell*, 100 Cal.App.2d 200, 204 [223 P.2d 305].) Accordingly, the appeal from the judgment in the Cicinelli case (No. 23412) will be dismissed.

On their appeal from the adverse judgment in their action against Anfa appellants contend : (1) that certain findings are unsupported by the evidence, (2) that the trial court made conflicting findings on the same evidence, and (3) that the trial court erred with respect to certain rulings on evidence, and (4) in consolidating the two actions for trial.

Despite the voluminous record and the extensive arguments of counsel, the really decisive question on this appeal may be simply stated : *is there substantial evidence in the record to support the trial court's finding that Kiro Nagano exercised the lessee's option to extend the Kurtzman lease?*

If Nagano did, in fact, exercise his option to extend the Kurtzman lease, the condition precedent to Anfa's right to extend its sublease was satisfied. Furthermore, as we shall later point out, the legal relationship between Nagano as lessee, and Anfa as sublesseee, under the Kurtzman lease, was such that the substantially contemporaneous exercise of the two options created rights in favor of Anfa that were of such a character that they could not be defeated by the actions of appellants in executing a new lease with the owners and thereafter taking an assignment of the lessee's interest in the Kurtzman lease.

■ A provision in a lease giving the lessee the option to extend or renew the lease creates only a contractual right. (*Hayward Lbr. & Inv. Co. v. Construction Products Corp.*, 117 Cal.App.2d 221, 229 [255 P.2d 473] ; 51 C.J.S. 596, § 56 ; 35 C.J. 1012, § 129.) It does not transfer any interest in the land (*Dougherty v. California Kettleman Oil Royalties, Inc.*, 9 Cal.2d 58, 78 [69 P.2d 155]) until the option is exercised. (*Standard Oil Co. v. Slye*, 164 Cal. 435, 442 [129 P. 589].) ■ However, when the option is exercised the cove-

nant to renew ceases to be merely personal and runs with the land. The legal successors of the lessee as well as of the lessor are entitled to the benefits, and are burdened with the duties and obligations, which the covenant conferred and imposed on the original parties. (*Standard Oil Co.* v. *Slye, supra,* 164 Cal. 435; 30 Cal.Jur.2d 176, § 48; 51 C.J.S. 601-602, § 58(b); 35 C.J. 1013, § 133; see generally 1 Tiffany, Real Property, 208, § 126.)

As stated in 14 California Jurisprudence 2d 17, section 12: ''The distinguishing characteristic of a covenant running with the land is that both liability upon it and enforcement of it pass with the transfer of the estate. Covenants running with the land are binding on subsequent transferees of the property, even though they do not contractually assume any responsibility for their performance. In other words, if the covenant runs with the land, it is unnecessary to establish liability founded on privity of contract. It binds not only the original covenantor, but also his heirs, devisees, assignees, and subsequent purchasers.''

Thus, where the lessee has exercised an option to renew a lease, his right to possession of the premises for the additional term cannot be defeated by the actions of the landlord. The lessee is entitled to specific performance of the covenant to renew. (*Penilla* v. *Gerstenkorn,* 86 Cal.App. 668 [261 P. 488]; *Hall* v. *Center,* 40 Cal. 63, 68; *cf. Standard Oil Co.* v. *Slye, supra,* 164 Cal. 435, 442-444.) The sublessee stands in exactly the same position and becomes vested with a right to possession of the premises for the additional term when the renewal or extension options of both lease and sublease have been exercised. In *Horn & Hardart Co.* v. *115 East 14th Street Co.,* 7 N.Y.S.2d 688, 690, the lessee, with an option to renew for an additional term, executed a sublease with a similar renewal provision. Prior to the expiration of the original term, the lessee exercised its option to renew and the sublessee, pursuant to the provisions of the sublease signified its desire to renew. It was held that the lessee could not thereafter withdraw its exercise of the option, and the sublessee was granted specific performance of the renewal provisions of the lease and sublease as against the owner and the lessee. (See anno. *Lease—Option to Renew—Duty to Sublessee,* 127 A.L.R. 948, 953.) Thus, in the case at bar the exercise of the options in the lease and sublease operated to vest

in Anfa a right to possession for the additional term as against the owners and their lessees.

The instant record discloses a substantial conflict in the evidence, particularly in the testimony of Cicinelli and Nagano as to conversations between them relative to the extension of the Kurtzman lease. However, according to the familiar rule, all conflicts must be resolved in favor of respondent and all legitimate and reasonable inferences indulged to uphold the judgment. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Roberts* v. *Salot*, 166 Cal. App.2d 294, 296 [333 P.2d 232]; see 4 Cal.Jur.2d 485, § 606.) In the light of this rule we may summarize the evidence bearing on Nagano's alleged exercise of the option as follows: Nagano acquired his interest in the Kurtzman lease in 1948 by an assignment from the original lessee. He paid a monthly rental of $740. Late in 1955 or early in 1956, Nagano approached Cicinelli and discussed the exercise of the option under the Kurtzman lease. No agreement was reached by the parties, but it was the understanding of both that the monthly rental for the additional five-year period would be $1,040. In May of 1956 Nagano indicated to Cicinelli that he was considering the sale of his business and his leasehold to appellants, the Iwasakis, whom he had known for approximately 20 years. Later that month or early in June there was a meeting at Nagano's home at which appellants, Nagano, and Cicinelli were present. The sale of Nagano's business was discussed, and appellants indicated a desire for a lease with a term of 10 years. Cicinelli responded that he would consider such an arrangement only *after* the five-year option of the Kurtzman lease had been taken up. No agreement was reached; however, at a second meeting of all the parties in June, 1956, Cicinelli indicated that if the five-year option was exercised, he would give appellants a new lease for a second five-year period. Again the parties came to no agreement but they consulted their respective attorneys and continued the negotiations.

On June 26, 1956, as we have previously noted, Anfa sent Nagano written notice of its exercise of the option to extend the sublease. A few days before the end of June, Cicinelli received a telephone call from Shogo Iwasaki and Cicinelli testified the following conversation ensued: "He said it was near the end of the month, and he says, 'Who is to exercise this option?' We talked it over. Q. Now, what did you say? A. I said that Mr. Nagano has the lease and he should send

me the check to take up the option. Q. Did you make any mention as to the amount? A. Yes. I told him it would be $1040. Q. What did Mr. Shogo Iwasaki say, if anything? A. He didn't say any more.''

Thereafter, on June 30, 1956, Nagano mailed to the Cicinellis his check in the amount of $1,040. This check was received by the owners on July 3, 1956. No writing accompanied the check, nor was there any notation thereon respecting the purpose for which it was sent. It should be observed that under the Kurtzman lease the last six months' rental had been prepaid and no sums were due as rent from Nagano to Cicinelli. At about this time, appellants, with Nagano's consent, took possession of the part of the leased premises occupied by Nagano's produce business.

Nagano's version of the events leading up to the mailing of the check is quite different from Cicinelli's. He testified that he did not intend to exercise the option, and he explained that the check for $1,040 was sent to Cicinelli, at Cicinelli's request, as advance rent on the *new* lease which was to be executed between Cicinelli and appellants. His explanation was that the check was to cover the rental for a period subsequent to January 1, 1957, and that when the sale of his business and leasehold to the appellants was completed, he would be repaid the rent he had advanced. Cicinelli did not recall the conversation to which Nagano testified. It may be observed that at another point, on cross-examination, Nagano indicated that the check was sent to pay the rent for July, 1956, although that month's rent was $740 and had been prepaid nine years before.

An option to extend a lease is merely an offer by which the lessor binds himself in advance to make a contract if the lessee accepts upon the terms and within the time designated. (*Hayward Lbr. & Inv. Co.* v. *Construction Products Corp.*, *supra*, 117 Cal.App.2d 221, 229; see generally 12 Cal.Jur.2d 204, § 15.) As stated in the last-cited decision: ''Since the optionor is bound while the optionee is free to accept or not as he chooses, courts are strict in holding an optionee to exact compliance with the terms of the option.'' (See also *Wightman* v. *Hall*, 62 Cal.App. 632, 634 [217 P. 580].) But a formal written exercise of the option is not essential. (*Buck* v. *Cardwell*, 161 Cal.App.2d 830, 836 [327 P.2d 223]; *Schmitt* v. *Felix*, 157 Cal.App.2d 642, 645 [321 P.2d 473]; *Cafe Apollo Co.* v. *Anselm*, 47 Cal.App.2d 151, 155 [117 P.2d 691].) And if the lease does not contain any provision as to

the manner and time in which the option is to be exercised, the tenant may exercise the option before the expiration of the original term by an act or course of conduct indicating to the lessor his election to renew. (*Dickinson* v. *Robinson,* 272 F. 77, 80; *Nicklis* v. *Nakano,* 118 Colo. 317 [195 P.2d 723, 724] [where the last month's rent had been prepaid, the tenant's mailing of a check and continuing in possession constituted an exercise of the option to renew]; see 51 A.L.R.2d 1412.)

However, if the option provision gives the lessor the right to demand an *increase* in the rental, to effectively exercise his option to extend the lessee must indicate his willingness to pay the increased rental. (*Colyear* v. *Tobriner,* 7 Cal.2d 735, 740 [62 P.2d 741, 109 A.L.R. 191]; see 30 Cal. Jur.2d 240, § 102.)

The evidence adequately supports the trial court's finding that the option was exercised, notwithstanding Nagano's testimony to the contrary. (*Odenthal* v. *Lee,* 113 Cal. App.2d 666, 669 [248 P.2d 937]; *Rolinson* v. *Rolinson,* 132 Cal.App.2d 387, 390 [282 P.2d 98].) As stated in *Nevarov* v. *Caldwell,* 161 Cal.App.2d 762, 777 [327 P.2d 111], the trier of the fact ". . . properly may reject part of the testimony of a witness, though not directly contradicted, and combine the accepted portions with bits of testimony or inferences from the testimony of other witnesses thus weaving a cloth of truth out of selected available material."

Both Nagano and appellants were fully aware of Cicinelli's insistence that the five-year option under the Kurtzman lease be exercised, and Nagano was also aware of Anfa's decision to exercise its option under the sublease. Negotiations between Nagano and appellants were evidently far advanced and appellants were in possession of and operating Nagano's produce business. Granted that there is no evidence that Shogo Iwasaki was acting as Nagano's agent when he telephoned to Cicinelli, nevertheless under the circumstances it is a fair inference that Shogo Iwasaki communicated Cicinelli's instructions to Nagano. The check for $1,040 which Nagano mailed immediately thereafter is otherwise inexplicable. For the preceding nine years the monthly rental had been only $740, but Nagano and Cicinelli had agreed that during the five-year extension the monthly rental would be $1,040. The fact that a check for this larger sum was sent supports the inference that Nagano was thereby indicating his intention to exercise the option and his willingness to pay the increased rental. (*Cf. Colyear* v. *Tobriner, supra,* 7 Cal.2d

735, 740.) The fact that Nagano sent Cicinelli a check at a time when he was not obligated to pay anything, and the fact that the check was for the exact sum which Cicinelli had set as the amount required for the exercise of the option permits the inference that Nagano thereby exercised the option under the Kurtzman lease.

Nagano's explanation that the check was a prepayment of rent on a new lease still under negotiation between Cicinelli and the Iwasakis could reasonably be rejected as improbable. Whether the option was exercised by Nagano was essentially a question of fact to be resolved by the trial court. (*Cf. Buck* v. *Cardwell, supra,* 161 Cal.App.2d 830.)

 Appellants' contention that the trial court made conflicting findings on the same evidence is unavailing. In the Cicinelli case (in which appellants prevailed) the trial court found that appellants were innocent of fraud and that the Iwasaki lease had not been effectively rescinded and was valid and subsisting. But in the Anfa case the court made a "catch-all" finding to the effect that all allegations of the answer not expressly found to be untrue were true. Referring to the allegations of fraud in Anfa's answer (which were not expressly found untrue), appellants argue that the resulting technical conflict in the findings in the two cases requires reversal of the judgment against them and in favor of Anfa.

This argument must be rejected. We have held that the judgment under review is independently sustained by adequately supported findings to the effect that the extension options in the Kurtzman lease and in the Anfa sublease were effectively exercised. Therefore, the issues concerning alleged fraud in the inducement of the Iwasaki lease have become wholly immaterial. By the same token, any technical inconsistencies in the findings upon such issues may be disregarded as immaterial. (*Bovo* v. *Abrahamson,* 100 Cal.App. 373, 381-382 [280 P. 191] ; see 4 Cal.Jur.2d 444, § 571.)

 Appellants also argue that there was a finding in the Cicinelli case that the Kurtzman lease had expired on December 31, 1956, directly conflicting with the findings in the Anfa case that Anfa is entitled to possession by virtue of the Kurtzman lease. Appellants' argument ignores the language of the finding in the Cicinelli case which refers to the termination of an "original" tenancy on December 31, 1956 ". . . subject to the right of option in the lessee to extend the same for an additional term of five (5) years thereafter . . ." Moreover, in the same finding, there is an express statement that

appellants' right to possession is ". . . subject to such rights of possession in Anfa Products, Inc., . . . as are adjudicated and estabished in the companion case . . ." Thus, it is clear that this finding merely refers to the termination of the original 10-year term under the Kurtzman lease and does not constitute a finding that the earlier exercise of the option provisions of the Kurtzman lease was ineffective to vest Anfa with the right to remain in possession under its sublease after December 31, 1956.

Appellants contend that the trial court erred in admitting the testimony of Cicinelli as to his understanding with Nagano that the monthly rental during the five-year extension would be $1,040. Appellants argue that the admission of Cicinelli's testimony violated the parol evidence rule. It is appellants' theory that under the Kurtzman lease the monthly rental during the five-year extension was to be $940, and that the trial court's finding that the monthy rental was $1,040 is without evidentiary support.

The option clause of the Kurtzman lease reads as follows: "9. It is hereby agreed that the Lessee shall have and is hereby given an option for an additional term of five years upon the same terms and conditions as are set forth in this lease except that the monthly rental may be increased to $900 per month if this is required by the Lessors."

The Kurtzman lease originally provided for a monthly rental of $600 per month *plus* a variable sum consisting of a percentage of certain profits of the lessee during the preceding month. Subsequently, the parties modified the Kurtzman lease as follows: a $40 a month rental was added for another lot included within the leased premises, the rental payment based on profits was deleted, and a flat increase of $100 a month was substituted therefor. The result was a constant base rental of $740 per month during the first 10 years of the Kurtzman lease. In the light of these amendments to the original lease the rental provisions of the option clause ceased to be entirely clear. Respondent asserts that the obvious effect of the option clause was to give the owner the right to demand a $300 monthly increase in the rent during the five-year extension, and that the rental under the option, as amended, was $1,040. Appellants argue that the clear import of the lease, as amended, was to set a limit of $940 which the owner could demand.

It is apparent that the lease, as amended, is not clear on its face (*cf. Decter* v. *Stevenson Properties, Inc.*, 39 Cal.2d 407, 416 [247 P.2d 11]) and is fairly susceptible of either of

the two constructions advanced. In such a situation, extrinsic evidence including the meaning given by the parties to the contract since its execution, is admissible. (*Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal.2d 517, 527 [297 P.2d 428]; *Union Oil Co.* v. *Union Sugar Co.*, 31 Cal.2d 300, 306 [188 P.2d 470].) ▇▇ Cicinelli's testimony was not admitted to vary or modify the terms of the lease but to aid the court in ascertaining the true intent of the parties, and as stated in *Beneficial Ins. Co.* v. *Kurt Hitke & Co., supra,* 46 Cal.2d 517, 524, ". . . a construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted and enforced by the court. (*Woodbine* v. *Van Horn*, 29 Cal. 2d 95, 104 [173 P.2d 17] . . . *Barham* v. *Barham,* 33 Cal.2d 416, 422 [202 P.2d 289].)"

▇ Appellants also complain that the trial court erred in striking certain testimony of Nagano to the effect that he did *not* intend to exercise the option to renew under the Kurtzman lease. On direct examination appellants' counsel propounded the following question: "Mr. Nagano, at the time you sent that $1,040 check to Mr. Cicinelli, did you intend by that act to renew your lease?" After the witness had answered the question in the negative, the court granted a motion to strike the answer and sustained an objection "to the form of the question." However, the court thereupon allowed appellants' counsel to reframe the question, and the witness was allowed to testify fully as to his intent and purpose in sending the check. Later the trial judge stated his understanding of the purport of Nagano's testimony on this point which was to the effect that the $1,040 check was given as an advance payment of rent on the lease which was in process of negotiation between appellants and the Cicinellis. In this state of the record, appellants' assignment of error must be rejected.

▇ Finally, appellants' contention that the court committed prejudicial error in consolidating the two cases for trial must be rejected. The order was within the court's discretion (Code Civ. Proc., § 1048) and appellants have failed to establish an abuse of that judicial discretion, or, if it occurred, how it might be remedied on this appeal.

The appeal from the judgment in the Cicinelli case (No. 23412) is dismissed; the judgment in the Anfa case (No. 23413) is affirmed.

Fox, P. J., and Ashburn, J., concurred.