**FIRE INSURANCE EXCHANGE, Plaintiff–Appellant,**

v.

**Lindsey Daniel RAEL, a minor child, By her guardians and next friends, Steven D. RAEL and Tammy B. Rael, and Steven D. Rael and Tammy B. Rael, individually and as parents of Lindsey Daniel Rael, and Christine M. Medina and Anthony Medina, Jr., Defendants–Appellees.**

No. 93CA2027.

Colorado Court of Appeals, Div. I.

March 23, 1995.

Rehearing Denied April 27, 1995.

Hall & Evans, L.L.C., Malcolm S. Mead, Eugene O. Daniels, Denver, for plaintiff-appellant.

No appearance for defendants-appellees.

Opinion by Judge CASEBOLT.

In this action concerning coverage under a homeowner's insurance policy for a dog bite incident, plaintiff, Fire Insurance Exchange (FIE), appeals the declaratory judgment finding coverage in favor of its insureds, Anthony Medina (Medina) and Christine Medina, and the dog bite victim Lindsey Rael and her parents (Raels). We affirm.

The insureds purchased a homeowner's insurance policy from FIE. An investigator retained by FIE after an unrelated loss evaluated the insureds' property and determined that they had three "vicious dogs," at least one of which was believed to be a pit bull terrier. The investigator also told FIE that Medina had been arrested for failing to appear to answer misdemeanor charges of having vicious dogs.

FIE notified the insurance agent handling the insureds' policy that, in order to renew the policy, they would be required to sign a dog liability exclusion. The agent notified the insureds and mailed a restrictive endorsement to them which provided:

We agree not to cancel this policy for thirty days from the date shown above. You and we agree that this policy does not cover loss by/to:

'ANY AND ALL DOGS WITHIN THE INSURED'S HOUSEHOLD OR FOR WHICH THE INSURED IS LEGALLY RESPONSIBLE.'

The form contained a space for the insureds' signature. They did not initially sign or return this restrictive endorsement.

Approximately three months later, FIE issued a notice of cancellation of the insureds' policy. The agent explained to them that because they had failed to sign and return the restrictive endorsement, the policy would be canceled in one month's time. The agent sent a second copy of the restrictive endorsement to the insureds for their signature.

There was conflicting testimony as to discussions between the agent and the insureds concerning this endorsement. The agent testified that he told the insureds that FIE would not insure them unless the endorsement was signed and that the endorsement excluded all of the dogs. Medina, however, testified that he was led to believe that only the female pit bull terrier was of concern and that, because she had been put to sleep, the endorsement would need to be signed, but would not apply to the remaining dogs. Medina did not appear at trial, but testified via deposition that he believed he would be notified after FIE received the signed endorsement if FIE was still going to exclude the remaining dogs.

It was undisputed that the insureds signed and returned the restrictive endorsement to the agent with the following handwritten note across the top of the form: "Female pit bull was put to sleep by Northglenn Animal Control 10–31–88." Medina testified that he signed the endorsement and made the hand-

written notation in the agent's office. The insurance agent testified that the insureds mailed the endorsement to his office and that he saw the handwritten note but believed it was merely written for informational purposes. The signed endorsement with the handwritten note was thereafter returned to FIE. The policy was not canceled and was renewed in subsequent years without further change or additional signatures by the insureds.

The incident at issue occurred several years later, while the renewed policy was in force, when Lindsey Rael was attacked and severely injured by one of the remaining dogs owned by the insureds. The Raels sued the insureds for personal injuries and damages. FIE notified the insureds that there would be no coverage because of the restrictive endorsement, but provided a defense under a reservation of rights.

FIE subsequently filed this declaratory judgment action against the insureds and Raels to determine coverage under the policy. Raels' claims against the insureds were joined in that action but were stayed pending the outcome of the coverage issue.

In the coverage litigation, FIE argued that the restrictive endorsement clearly and unambiguously denied coverage for the dog bite incident. The trial court disagreed, concluding in essence that: 1) the handwritten addition to the restrictive endorsement created an ambiguity in the endorsement; 2) taken as a whole, the endorsement evidenced an agreement by the parties that only the female pit bull terrier was excluded from coverage; 3) the insureds were entitled to coverage under the doctrine of reasonable expectations; and 4) FIE was equitably estopped from denying coverage because of the insured's reasonable reliance on the agent's representations. This appeal followed.

## I.

FIE first contends that the restrictive endorsement, even including the handwritten statement, is clear and unambiguous and requires exclusion of coverage for any claim of loss caused by any dog owned by the insureds. Consequently, it reasons, the trial court erred in admitting extrinsic evidence and in denying its motion for summary judgment. We disagree.

■ We first reject FIE's contention that the trial court erred in denying its pretrial motion for summary judgment. Absent circumstances not present here, the denial of a motion for summary judgment may not be considered on appeal from a final judgment after trial on the merits. *Manuel v. Fort Collins Newspapers, Inc.*, 631 P.2d 1114 (Colo.1981); *Grogan v. Taylor*, 877 P.2d 1374 (Colo.App.1993).

We further reject the contention that the trial court erred in admitting extrinsic evidence to prove the intent of the parties.

■ Insurance contracts are construed in accordance with the general law of contracts. *Federal Deposit Insurance Corp. v. American Casualty Co.*, 843 P.2d 1285 (Colo. 1992). When the language used in a contract is plain and its meaning clear, the agreement must be enforced as written. *In re May*, 756 P.2d 362 (Colo.1988).

■ When a provision in an insurance policy is clear and unambiguous, the intent of the parties is determined from the plain language of the instrument itself, and extrinsic evidence is not admissible to reveal that intent. *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1978). However, when there is ambiguity in the terms of the agreement, extrinsic evidence is admissible. *In re May, supra.*

■ A provision in a policy is ambiguous when it is reasonably susceptible, on its face, to more than one meaning. *Parrish Chiropractic Centers, P.C. v. Progressive Casualty Insurance Co.*, 874 P.2d 1049 (Colo.1994).

■ Whether a contractual provision is ambiguous is a question of law. Mere disagreement between the litigating parties about the meaning of contract terms does not serve to create an ambiguity. *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371 (Colo. 1990). In deciding whether a contractual provision is ambiguous, a reviewing court is not bound by the trial court's findings on this

issue. *Alley v. McMath*, 140 Colo. 600, 346 P.2d 304 (1959).

To ascertain whether certain provisions of a contract are ambiguous, the language used therein must be examined and construed in harmony with the plain and generally accepted meaning of the words employed and by reference to all the parts and provisions of the agreement and the nature of the transaction which forms the subject matter. *Cheyenne Mountain School District # 12 v. Thompson*, 861 P.2d 711 (Colo.1993).

Moreover, in deciding whether a contract is ambiguous, a court may consider extrinsic evidence bearing on the meaning of the written terms such as evidence of local usage and of the circumstances surrounding the making of the contract. However, the court may not consider the parties' own extrinsic expressions of intent. *KN Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769 (Colo.1985).

In our view, the policy endorsement included both the typewritten language and that contained in the handwritten note. *See Goodwin v. Eller*, 127 Colo. 529, 258 P.2d 493 (1953) (an acceptance upon terms varying from those offered is a rejection of the offer unless the offeror assents to the modifications suggested). Moreover, FIE does not contend that the contract between the parties excludes the terms in the handwritten note. And, we concur with the trial court that the endorsement as a whole is reasonably susceptible to more than one meaning.

The endorsement excluding "any and all dogs" could be reasonably read to indicate that no dog is covered, with the handwritten notation merely serving to confirm the action taken by the insureds with regard to one of the dogs.

However, the endorsement could also be reasonably read as inapplicable, as the trial court did, because a "reasonable and logical conclusion" to be drawn from the inclusion of the handwritten statement was that Medina was led to believe that "although the exclusion refers to any and all dogs, that it really only applied to the female pit bull Kiva, and if the female pit bull Kiva were destroyed or put to sleep, then that exclusion regarding

coverage simply didn't apply." Consequently, there would be no reason to include the handwritten note unless it was intended to modify the broad language excluding "any and all dogs." The trial court concluded that "the weight of the evidence has established that."

The circumstances surrounding the making of the contract when the policy renewal date approached and the nature of the transaction support the determination that the contract is ambiguous. Medina testified that the agent told him, prior to his signature on the endorsement, that the exclusion would apply only with regard to the female pit bull and that FIE's concern lay only with that particular dog. Additionally, the endorsement was first tendered while the female pit bull was alive and the second time it was transmitted for signature, Medina responded by putting the female pit bull to sleep and by thereafter returning the endorsement with his signature and handwritten note. Hence, the restrictive endorsement could be read to apply only to the female pit bull terrier.

Once an ambiguity is found, it should be resolved by giving effect to the intention of the parties. *Board of County Commissioners v. Colorado Counties Casualty & Property Pool*, 888 P.2d 352 (Colo. App.1994). Interpretation of the intent of the parties in an ambiguous contract becomes an issue of fact for the trial court to decide in the same manner as other disputed factual issues. *Union Rural Electric Ass'n v. Public Utilities Commission*, 661 P.2d 247 (Colo.1983). And, parol and extrinsic evidence is admissible to ascertain the intent of the parties when a contract is found to be ambiguous. *Cheyenne Mountain School District # 12 v. Thompson, supra.*

Here, the trial court utilized parol and other extrinsic evidence to determine the intention of the parties to this insurance contract. The trial court's interpretation of the intent of the parties is supported by evidence in the record and is therefore binding on appeal. *See Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

In addition, the trial court's interpretation of the intent of the parties comports with the requirement that ambiguous insurance contracts are to be construed in favor of coverage, *Parrish Chiropractic Centers, P.C. v. Progressive Casualty Insurance Co., supra,* and with the rule of contract construction that, if there is any inconsistency or discrepancy between a printed form and handwritten portions, the latter control. *Nicklis v. Nakano,* 118 Colo. 317, 195 P.2d 723 (1948).

## II.

In view of the conclusion above, we necessarily reject FIE's contention that the trial court's findings are contrary to the preponderance of the evidence and are clearly erroneous. And, because of this disposition, we need not address FIE's remaining contentions.

Judgment affirmed.

METZGER and MARQUEZ, JJ., concur.